## UNITED STATES. *v.* FORT SCOTT.

Sect. 16 of a statute of Kansas, approved March 2, 1871, authorized cities of
the second class to pass ordinances imposing taxes for general revenue pur-
poses on all the taxable property within their limits, and make specified
public improvements; and provided that, to meet the cost of "paving, mac-
adamizing, curbing, and guttering of streets," assessments should be made
on all the lots or pieces of ground extending along the street the distance
to be improved, according to their assessed value. Sect. 17 provided that
these assessments should be known as "special assessments for improve-
ments," and be levied and collected as one tax, in addition to the general
taxes; but it empowered the mayor and council to issue for the cost of
such improvements bonds payable at the expiration of specified terms, and
make assessments in each year, to pay the principal and interest maturing
thereon during the fiscal year, upon the taxable property chargeable there-
with, "as provided in the last part of the preceding section." Other sections
authorized the city council to provide, when necessary, for the issue of bonds,
for the purpose of funding any and all indebtedness of the city, and required
it to make provision, by levying taxes payable in cash, for a sinking-fund for
the redemption at maturity of "the bonded indebtedness of the city," and to
levy annually taxes payable in cash on all taxable property within the city
in addition to other taxes, and in amount sufficient to pay the interest and
coupons, as they became due, on all the bonds of the city. Under this stat-
ute the city council of F., a city of the second class, passed an ordinance for
grading, paving, guttering, and macadamizing one of its streets within pre-
scribed limits, and for paying the cost of the work by the issue of special
improvement bonds of the city, signed by the mayor, attested by the city clerk
under the corporate seal of the city, and countersigned by the city treasurer.
The ordinance provided that the bonds should be paid, principal and interest,
solely from special assessments, to be made upon and collected from the lots
and pieces of ground upon the street the distance improved, in the manner
provided in sects. 16 and 17 of the above statute. Each bond issued under
this ordinance states in its margin that it is issued in accordance with sects.
16 and 17 of the statute, and in pursuance of an ordinance of the city of F.,
entitled an ordinance ordering the grading, curbing, guttering, and macadam-
izing of streets, and upon its face that it is a special improvement bond of the
city of F., Kansas. The city, for value received, thereby acknowledges itself
to owe, and promises to pay to the holder the amount thereof, and each bond
is indorsed with the certificate of the auditor of State that it was regularly
and legally issued. A., the holder for a valuable consideration of some of
these bonds before they matured, brought suit against the city, and recovered
judgment for the amount thereof in the ordinary form, except that the court
added, that it "be enforced and collected pursuant to law, in such case made
and provided." Said judgment not being paid, A. sued out a writ of *man-
damus* to compel the levy of a tax. The court below held that the levy must
be confined to special assessments upon the property benefited and improved.
*Held,* that his remedy was not so confined, and that the city was bound to
impose, in satisfaction of the judgment, a tax upon all the taxable property
within her limits.

ERROR to the Circuit Court of the United States for the District of Ka·sas.

A statute of Kansas, approved March 2, 1871, confers upon cities of the second class authority to enact ordinances for certain defined purposes. By the sixteenth section authority is given : 1st, to levy and collect taxes for general revenue purposes, not to exceed five mills on the dollar in any one year, on all the real, mixed, and personal property within their limits, taxable according to the laws of the State; 2d, to open and improve streets, avenues, and alleys, make sidewalks, and build bridges, culverts, and sewers, the cost of which may be met by assessments in the following manner, to wit: *first*, for opening, widening, and grading all streets and avenues, for building bridges, culverts, and sewers, and for footwalks across streets, assessments shall be made on all taxable property within the corporate limits of the city, not exceeding five mills on the dollar in any one year; *second*, for making and repairing sidewalks, assessments shall be made on all lots and pieces of ground abutting on the improvement, according to front feet; *third*, for paving, macadamizing, curbing, and guttering streets, alleys, and avenues, and excavating, grading, and filling same, and for improvements of the squares and areas formed by the crossing of streets, assessments shall be made on all lots and pieces of ground to the centre of the block extending along the street or avenue, the distance improved or to be improved, according to the assessed value of the lots or pieces of ground, without regard to the buildings or improvements thereon, which value must be ascertained by three disinterested appraisers, appointed by the mayor and council.

By the seventeenth section it is declared that assessments made pursuant to the third clause of the second subdivision of the preceding section shall be known as " special assessments for improvements," and, except as thereinafter provided, shall be levied and collected as one tax, in addition to taxes for general revenue purposes. But the mayor and council are empowered to issue bonds of the city for the costs of paving, macadamizing, curbing, and guttering streets and avenues, and excavating, grading, and filling for same, to be made payable as follows: one-third of the aggregate amount of bonds of any

issue in one year, one-third in two years, and one-third in three years, with interest from date, at the rate of ten per cent per annum, payable annually. "And for the payment of said bonds, assessments shall be made in each year to pay the principal and interest maturing on said bonds during said fiscal year, upon the taxable property chargeable therewith, as is provided in the third clause of the second subdivision of the preceding section, and such tax shall be certified by the city clerk to the county clerk, and placed upon the tax-roll for collection, subject to the same penalties and collected in like manner as other taxes." Laws of Kansas, 1871, p. 148.

The eighteenth section provides that " the council may appropriate money and provide for the payment of the debts and expenses of the city, and, when necessary, may provide for issuing bonds for the purpose of funding any and *all* indebtedness now existing or hereafter created of the city, now due or to become due." And for the payment of any coupons of bonds issued under that section the council is required to levy taxes, payable in cash, on all the property in the city, in addition to other taxes. Id.

The nineteenth section declares that the council may provide for making any and all improvements of a general nature in the city, and to pay for same may, from time to time, borrow money and issue bonds. In the payment of such bonds, with their interest coupons, at maturity, the council is required to levy taxes, payable in cash, on all taxable property within the city, in addition to other taxes. Bonds authorized by that section cannot, however, be issued unless the council is previously instructed to do so by a majority of all the votes cast at an election held for that purpose.

By sect. 21 the council is required " to make provision from time to time for a sinking-fund to redeem at maturity the bonded indebtedness of the city," the taxes levied for that purpose being payable only in cash.

By sect. 22 the council is authorized and required to levy annually taxes, payable in cash only, on all the taxable property within the city, in addition to other taxes, and in amount sufficient to pay the interest and coupons as they become due

" on *all* the bonds of the city " then (1871) issued or thereafter to be issued by the city.

These sections seem to be the only portions of the statute of March 2, 1871, which have any direct bearing upon the question presented for consideration.

In the year 1872, the city council of Fort Scott, being a city of the second class, by ordinance required one of its streets to be graded, paved, guttered, and macadamized, within prescribed limits, the cost of the work to be paid for in bonds of the city, to be registered and classified as special improvement bonds, and which might be made payable in New York. The ordinance provides that the bonds " shall be. paid, principal and interest, solely from special assessments to be made upon and collected solely from the lots and pieces of ground fronting upon and extending along the street the distance improved, in the manner provided in sects. 16 and 17 of an act of the legislature of Kansas relating to the powers and government of cities of the second class, approved March 2, 1871."

In accordance with that ordinance, bonds with coupons attached were issued and negotiated to the amount of several thousand dollars.

Upon the margin of each bond is this statement: " Issued in accordance with sects. 16 and 17 of an act of the legislature of Kansas, entitled an act relating to the powers and government of cities of the second class, and to repeal certain sections of chapter 19 of the general statutes of 1868, approved March 2, 1871, and in pursuance of an ordinance of the city of Fort Scott, entitled an ordinance ordering the grading, curbing, guttering, and macadamizing a part of Wall Street." Upon each bond also was indorsed the official certificate of the auditor of the State, to the effect that such bond " had been regularly and legally issued, that the signatures thereto were genuine," and that the bond had been duly registered in his office in accordance with the statute of March 2, 1872.

The Concord Savings Bank having become the holder and owner, for a valuable consideration and before maturity, of some of these bonds, and failing to obtain payment, sued the city, and recovered judgment for the amount thereof in the Circuit Court of the United States for the District of Kansas.

The judgment is in the ordinary form, except that the court adds : " And it is further ordered and adjudged that the judgment now here rendered be enforced and collected pursuant. to law in such case made and provided."

Subsequently the bank sued out an alternative writ of *mandamus*, commanding the city council to levy and collect a. sufficient tax upon all the taxable property within the city to pay the judgment, interest, and costs.  But, upon demurrer, the court below held that the relator was only entitled to a levy of special assessments upon the property benefited and improved, and upon that ground the writ was .quashed and the relator's information dismissed.  The relator then sued out this writ of error.

*Mr. J. D. McCleverty* for the defendant in error, in support of the judgment below.

The court, in rendering the original judgment against the city, annexed to it a special provision, which had been approved in *County of Cass* v. *Jordan*, 95 U. S. 373, and *County of Cass* v. *Johnson*, id. 360.  The judgment, therefore, should not be construed to be an absolute one, rendering the city liable at all events to pay the same, and entitling the relator to the levy of a general tax, inasmuch as, by the provisions of the statute and the ordinance under which the bonds were issued, the means of paying them were to be derived exclusively from the taxable property chargeable therewith.  The relator was fully cognizant of the fact when he purchased these bonds, as he had full notice by the recitals upon their face.  While the city is bound by these recitals, he is equally so.  He is therefore affected with notice of the ordinance, as it was necessary to authorize the issue of the bonds.  The provision touching this special tax for the payment of them was a part of the contract, which cannot be modified or repealed, and it was that provision which the court obviously had in view in giving to the judgment its exceptional form.

The uniform ruling has been, that where a liability created by law is payable out of a special fund, that fund can alone be resorted to for payment.  *McCullough* v. *The Mayor, &c. of Brooklyn*, 23 Wend. (N. Y.) 458 ; *Lake* v. *Trustees of Williamsburgh*, 4 Den. (N. Y.) 520 ; *Hunt* v. *City of Utica*, 18 N. Y. 442 ;

*Eilert* v. *The City of Oshkosh*, 14 Wis. 586; *Whalen* v. *La Crosse*, 16 id. 271; *Silkman* v. *Milwaukee*, 31 id. 555; *Finney* v. *Oshkosh*, 18 id. 209.

In Michigan, it is the rule that the corporation is only liable for the special assessment. *The People* v. *Township of Zilwaukie*, 10 Mich. 274; *Goodrich* v. *Detroit*, 12 id. 279; *Bank* v. *The City of Lansing*, 25 id. 207. See also *City of New Albany* v. *Sweeney*, 13 Ind. 245; *Casey* v. *Leavenworth*, 17 Kan. 189.

*Mr. James D. Campbell, contra.*

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The vital question upon this writ of error is, whether the city is under a legal obligation to impose, in satisfaction of the relator's judgment, a tax upon all the taxable property of the city. If so, the judgment dismissing the information should be reversed; otherwise, it must be affirmed.

It is contended by counsel for the plaintiff that as the judgment for the debt has never been modified or reversed, the city is estopped, in this proceeding, to say that the relator was entitled only to a levy upon the property specially benefited. A determination of that question does not seem absolutely necessary in view of our conclusions upon other issues presented in the case. We therefore waive its consideration, and proceed to an examination of the statute of March 2, 1871, under which the bonds were issued. We are the more inclined to pursue this course because of his frank concession, that perhaps the purpose of the learned judge who framed the order of dismissal was to reserve the real question in controversy for determination when proceedings for *mandamus* should come before him.

In our examination of the statute of March 2, 1871, we are impressed with a strong conviction that the legislature intended to confer upon cities coming within its provisions the amplest authority, not only to incur obligations for all legitimate municipal purposes, but to meet promptly every obligation thus incurred. Unusual care seems to have been taken to guard the financial credit of such cities by provisions which, if enforced, would not only give confidence to creditors, but render municipal repudiation impossible. This care is manifested in the

section which requires the council to establish a sinking-fund for the redemption, at maturity, of " the bonded indebtedness of the city," that fund to be supplied by taxes, payable only in cash. It is further shown in the section which both authorizes and requires sufficient taxation annually on all taxable property within the city to meet the interest as it matures " on *all* the bonds of the city." It is still further indicated in the section which declares that the council " may . . . provide for the payment of the debts and expenses of the city." No express restriction is imposed as to the mode in which such provision may be made, except that, when necessary, " any and all indebtedness of the city " may be met by issuing funding bonds, the interest upon which may be paid by taxation " on all the property of the city, in addition to other taxes." A faithful exercise of the powers thus conferred would seem to be sufficient to secure the prompt satisfaction of any municipal indebtedness incurred in accordance with the provisions of the statute of 1871. That the bonds for the amount of which the relator obtained judgment constitute a " debt," or a portion of " the bonded indebtedness " of the city, within the meaning of the statute, cannot well be doubted. The ordinance which required the improvements in question in terms directs that the cost thereof " shall be paid for in the bonds of the city," to be signed by the mayor, attested by the city clerk under the corporate seal of the city, and countersigned by the city treasurer. Further, each bond declares upon its face that it is a " special improvement bond of the city of Fort Scott, Kansas ; " and that the city, " for value received, acknowledges itself to owe, and promises to pay to the holder " the amount thereof. Still further, the statute under which the ordinance was framed authorizes the council to pay the cost of such special improvements by issuing " the bonds of the city." Finally, the bonds were negotiated by the city authorities, by whom the proceeds were received and expended under the direction of the council. They constitute, therefore, in every just sense, debts which the city, in its corporate capacity, is under a statutory and legal obligation to provide for in some effectual, substantial manner.

But, in behalf of the city, it is urged that the holder of these bonds must, by the terms of the statute, and the ordinance of

Jan. 22, 1872, look for payment exclusively to assessments upon the property specially improved and benefited. It is contended that such was the purpose of the city, of which the purchaser had constructive notice in the reference, in the marginal statement upon the bonds, both to sects. 16 and 17 of the act of March 2, 1871, and to the ordinance passed by the council. To that interpretation of the contract we cannot yield our assent. It is true that sect. 17 declares that " for the payment of said bonds" assessments shall be made " upon the taxable property chargeable therewith ; " that is, " on all lots and pieces of ground to the centre of the block, extending along the street or avenue, the distance improved." But it is neither expressly nor by necessary implication provided that the holder of the bonds may not be paid in some other mode, or that the city will not, under the authority derived from other sections of the statute, comply with *its* promise to pay the bonds, with interest, at maturity. As between the city and its tax-payers, it was certainly its duty, through the council, to provide, if practicable, payment by taxation upon the property improved, rather than upon all the taxable property within its corporate limits. But the duty to make such distribution of the burden of special improvements did not lessen its obligation, in accordance with its express agreement, to pay the interest and principal of the bonds at maturity. *Hitchcock* v. *Galveston*, 96 U. S. 341.

The main difficulty comes from the peculiar phraseology of the city ordinance prescribing the source from which the means for the payment of the bonds should be obtained. The statement in the ordinance that the bonds " shall be paid, principal and interest, solely from special assessments, to be made upon and collected solely from the lots and pieces of ground fronting upon or extending along the street the distance improved," should be regarded only as an expression, in emphatic terms, of the purpose and duty of the city, as between all its tax-payers, to impose the cost of the proposed improvements upon the property specially benefited. There is no reason to presume that the ordinance was intended to mean more than the statute under which it was enacted. The general reference, upon the margin of the bonds, to the ordinance under which the improve-

ment was projected should not, in view of the general powers of the council, as declared in the statute, be held as qualifying or lessening the unconditional promise of the city, set forth in the body of the bonds, itself to pay the bonds, with their prescribed interest, at maturity. The agreement is, that the city shall pay the interest and principal at maturity. There is no reservation, as against the purchasers of the bonds, of a right, under any circumstances, to withhold payment at maturity, or to postpone payment until the city should obtain, by special assessments upon the improved property, the means with which to make payment, or to withhold payment altogether, if the special assessments should prove inadequate for payment. Experience informs us that the city would have met with serious, if not insuperable, obstacles in its negotiations had the bonds upon their face, in unmistakable terms, declared that the purchaser had no security beyond the assessments upon the particular property improved. If the corporate authorities intended such to be the contract with the holders of the bonds, the same good faith which underlies and pervades the statute of March 2, 1871, required an explicit avowal of such purpose in the bond itself, or, in some other form, by language, brought home to the purchaser, which could neither mislead nor be misunderstood.

In this case, it is alleged by the city that the special assessments required by the seventeenth section of the act of 1871 were duly made before the maturity of the bonds, and that all amounts collected in that mode have been promptly paid over by the city to holders of such bonds. But the unquestioned fact remains, that the bonds, with some interest, held by the relator, were not met at maturity as the city agreed that they should be. They are still unpaid. The special assessments made have, from some cause not explained in the answer of the city, proven wholly insufficient. Nor does it appear that they will ever prove sufficient for the payment of the relator's judgment. The corporate authorities repudiate all legal obligation upon the part of the city to provide payment in any other mode or from any other source, a position which we hold to be untenable and in violation of a plain duty imposed by statute. We are of opinion that the council has the power, under this statute, to provide for the payment of the relator's judgment

by taxation upon all the taxable property within the city, and such should have been the judgment of the court below. A discharge of that duty will in nowise interfere with the right of the council to reimburse the city, if that be now possible, for all amounts thus paid, out of special assessments upon the property primarily chargeable with the cost of the work on account of which the bonds were issued.

The judgment will be reversed, with directions for further proceedings in conformity with this opinion ; and it is

*So ordered.*