MINDEN-EDISON LIGHT & POWER COMPANY, APPELLANT,
v. CITY OF MINDEN ET AL., APPELLEES.

FILED JUNE 26, 1913.  No. 17,629.

1. **Municipal Corporations:** ELECTRIC LIGHT BONDS: TIME OF PAYMENT. The proposition on which the electric light bonds in question were voted examined, and *held* that it provides that the bonds are to be made payable in twenty years, and redeemable at any time after five years from the date when they are issued.

2. ———: POWERS: TAXATION. Where a municipal corporation is authorized to create an extraordinary debt by the issuance of negotiable bonds, it has the inherent power to levy taxes sufficient to meet the payment of the principal and interest of such bonds at maturity, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention.

3. ———: ———: ELECTRIC LIGHT PLANT. Plaintiff's franchise examined, and *held* that it contains no provisions which prevent the city from constructing and operating another electric light system.

4. ———: ———. A city of the second class or village may house the machinery necessary to operate its electric light system in the same building with the machinery used in operating its water plant.

5. ———: BOND ELECTION: VALIDITY. The fact that, in the discussion of the proposition to vote bonds to construct an electric light system, certain persons express an opinion that the surplus revenues arising from the operation of the lighting system could be used to help pay the principal and interest on the bonds, does not render the election void.

APPEAL from the district court for Kearney county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*J. L. McPheely, Adams & Adams,* and *P. A. Hines,* for appellant.

*C. P. Anderbery, contra.*

14

BARNES, J.

This action was brought by the Minden-Edison Light & Power Company against the city of Minden to enjoin the issuance and sale of $15,000 in bonds voted by the electors of that city to establish an electric light system. A temporary injunction was issued by the county judge of Kearney county, and upon a hearing of the case in the district court for that county the injunction was dissolved, the action was dismissed, and the plaintiff has brought the case to this court on appeal.

It is the contention of the plaintiff that the bonds in question are void on account of the language contained in the notice of election providing for the time of their payment. The language of the notice was: "Shall the city of Minden, Kearney county, Nebraska, borrow money and issue the bonds of said city in the sum of $15,000, in denominations of $100, or any multiple thereof, bearing interest at such rate as the mayor and city council may determine at the time of issuance of said bonds, not to exceed 5½ per cent., payable semiannually, principal and interest payable at the fiscal agency of the state of Nebraska, city of New York, state of New York; said bonds to mature 20 years from the date thereof, but, at the option of the city of Minden, payable at any interest pay day in the order in which bonds are numbered from one up to and including the last, and in any event payable at any time five years after the date of their issuance."

It is urged that this is a violation of the provisions of the statute in force at the time the election was held, and that by the language of the proposition submitted the bonds may be made payable in less than five years from the date of their issuance. We think the proposition is not vulnerable to the plaintiff's contention. The proposition on which the bonds were voted clearly means that they are to be made redeemable at any time after five years from the date on which they are issued, in the order in which they are numbered, and not payable at any earlier date.

The language used might have been made plainer, but it seems clear to us that the words, "payable at any interest pay day in the order in which bonds are numbered from one up to and including the last," are limited by the expression, "in any event payable at any time five years after the date of their issuance." Such is the construction which the defendants have placed upon the proposition by their answer and the evidence, as shown by the record.

It is next contended that the bonds are void because there is no provision in the law under which they are voted for levying a tax to pay the principal and interest. It is true that prior to April 23, 1913, there was no provision for levying a tax in the sections of the statute authorizing the voting of these bonds. Since April 21, 1913, there has been made ample provision for such levy.

In *Ralls County Court v. United States*, 105 U. S. 733, it was held that, where authority is granted to a municipality or subdivision of the state to contract an extraordinary debt by the issuance of negotiable securities, it has the power to levy taxes sufficient to meet such debt at maturity, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention. This case points out the distinction between the power of the city to issue the bonds in question and those where there was a limitation in the act authorizing the issuing of bonds. There is no such limitation in the act under which the election was held.

In *Loan Ass'n v. Topeka*, 87 U. S. 655, it was held that a law which authorizes a town to contract debts or other obligations payable in money implies the duty to levy taxes to pay them, unless some other fund or source of payment is provided.

In *United States v. New Orleans*, 98 U. S. 381, it was held that, when authority to borrow money or incur an obligation to execute a public work is conferred upon a municipal corporation, the power to levy a tax accompanies it without any special mention that such power is granted.

It is next contended that the election is void because the petitions ask that the mayor and city council have power to provide for the establishment and maintenance of an electric light system for the city, in accordance with sections 8704-8708, Ann. St. 1909, at a cost of not to exceed $15,000. It is argued that the proposition was misleading for the reason that the petitions use the words "light system," instead of the words "lighting system." We think this variance in the language is wholly immaterial.

It is further contended that the plaintiff light company has an exclusive franchise, or such a contract for lighting that it will bar the city for 50 years to construct its own system. It is not argued that the franchise by its terms gives to the light company an exclusive contract; but it is contended that the contract with the city of Minden for street lighting cannot be violated by the city by constructing a municipal plant. To this contention it may be answered: First, that there is no contract with the company by which the city of Minden is bound to take street lights; and, second, even if such a contract exists, the city can continue to perform the obligations existing under the contract, and at the same time construct and operate a municipal lighting system for itself. If the franchise to the present company were by its terms exclusive, such a franchise or contract is prohibited in direct terms by the constitution of this state. Section 5 of the present franchise provides that the company agrees to furnish free lights of a certain type to the city at four street intersections to be selected by the council; and for every arc light required to be taken by the city payment shall be made on a certain basis. It is not disputed, however, that the light company furnished the required lights free, and, if the city of Minden should decide it did not need the lights now running, it could order them stopped, and the present company would have no option in the matter. Even if it were held that the light company does have a contract for four arc lights upon the streets, a municipal plant might be conducted by the city by the payment for said lights, and there

would be no conflict between the rights of the present company and the one proposed to be established.

In *City of Joplin v. Southwest Missouri Light Co.*, 191 U. S. 150, it was held that there was no implied contract which would prevent the city from selling light to private and public consumers from its municipal plant.

In the case at bar there has been no language pointed out in the franchise whereby the city, in express terms, or even impliedly, has agreed to take any number of lights. But concede, for the sake of argument, that the present lighting company has a contract with the city of Minden for a certain number of lights at a fixed price, until those lights have been shut off, or payment for the same has been refused, the present light company would have no cause of action against the city, and there is nothing in the franchise of the present lighting system which can be made a basis for an injunction.

It is also contended that the city has no power to join its water-plant with an electric lighting system. We think this contention is without merit. It appears that the city of Minden voted water-works bonds and constructed its present system of water-works some 23 years ago, and has now submitted the proposition to construct an electric light plant, and it is the purpose of the city to build additional walls on the west side of the present building housing the water-works, within which to house the electrical machinery to be used in its system of electric lighting. It is said another boiler will be added at the expense of the light fund, and the two boilers used as occasion demands for the generation of electric current and the pumping of water. This is an economical arrangement both as to the expense of maintenance and construction. It is clearly provided by the statute under which the bonds in question are voted that, in cities and villages having and maintaining a system of water-works and a water commissioner, such water commissioner shall be *ex officio* heat or light commissioner, and thus the two systems may be merged into one, and the city supplied, not only with

water, but with electric lights. Section 8997, Ann. St. 1911, provides that the same commissioner shall have charge of both plants, and it is clearly contemplated that they may be constructed together, so that the commissioner can attend to his duties at both plants at the same time. We can see no reasonable objection to this manner of conducting the business, and this contention cannot be sustained.

Finally, it is contended that a fraud was committed upon the voters of the city of Minden by the mayor and city council and the electrical engineer in the campaign prior to the bond election. This contention is based on the suggestion that some of the officers of the city and some of the citizens understood that the surplus money accumulated from the revenues which would be derived from the consumption of an electric current might be applied to the payment of the interest and principal of the bonded debt. The evidence on the part of the witnesses for the city is fairly represented by the testimony of Charles A. Chappell, the city clerk, county attorney, L. W. Hague, and T. F. Sturdevant, the electrical engineer employed by the city. As we read the record, none of these persons positively stated that the surplus would be so applied, but simply that it might be applied to the payment of the principal and interest of the bonds which went into the construction of the new lighting plant. At most, this was an expression of an opinion, and, so far as the record discloses, the election was conducted, maps were drawn, plans and specifications were filed with the city clerk, and two meetings were held, at which time the questions were fully discussed. The notice of the election was published in both of the newspapers published and in general circulation in the city of Minden, and in fact every phase of the question was placed before the voters of the city. If any misrepresentations or misstatements of fact were made at either of the meetings, there was plenty of opportunity to correct the same. The election seems to have been fairly conducted, and resulted in an overwhelming majority for the issuance of the bonds in question.

As we view the record, the district court correctly held that the temporary injunction be dissolved and the action dismissed, and the judgment of the district court is therefore

AFFIRMED.

REESE, C. J., LETTON and FAWCETT, JJ., not sitting.