LURA F. ALEXANDER, APPELLANT, V. J. H. BAILEY, APPEL-
   LEE: STATE OF NEBRASKA, INTERVENER.

FILED JUNE 12, 1922.   No. 22645.

.1. **Municipal Corporations:** PAVING DISTRICT BONDS: LIABILITY OF
   CITY. Where a city of the second class issues its bonds, designated
   as "paving district bonds," under the provisions of section 5110,
   Rev. St. 1913, as amended by chapter 50, Laws 1919, which author-
   izes such cities to pave streets, and assess the cost thereof upon
   property in the paving district in proportion to benefits, and where
   the statute contains no provision that such bonds shall be payable
   only out of the funds realized from such assessment, and where
   neither the bonds nor the ordinance authorizing the same contain
   such a declaration, and where the bonds purport on their face to
   be the general obligations of the city, the city is bound for their
   payment.

2. ———: ———: ———: REFUNDING. In such case, the debt will
   be regarded as a general obligation of the city, and may be re-
   funded under the provisions of section 425, Rev. St. 1913, as
   amended by chapter 197, Laws 1921.

3. ———: STREET IMPROVEMENTS: AUTHORITY OF CITY. Where a
   statute authorizes a city to pave streets, and such statute contains
   no restrictions to the contrary, there arises an implication that
   such city is authorized to enter into contracts for the performance
   of the work, and also to pay for the same by a general tax levy.

APPEAL from the district court for Webster county:
LEWIS H. BLACKLEDGE, JUDGE. *Reversed, with directions.*

*William C. Dorsey* and *Howard S. Foe,* for appellant.

*J. S. Gilham* and *Frank J. Munday, contra.*

*Clarence A. Davis, Attorney General,* for the state.

*Stout, Rose, Wells & Martin, amici curiæ.*

Heard before MORRISSEY, C. J., ALDRICH, DAY and
FLANSBURG, JJ.

DAY, J.

The question presented for determination by this record
is whether certain defaulted district paving bonds, issued

by the city of Red Cloud, a city of the second class, to raise funds to pay for paving in paving districts, are such general obligations of the city as will warrant the city in taking them up by the issuance of funding bonds payable from funds raised by a general tax.

It appears that the city, by proper ordinances of the council, had created paving districts designated numbers 2, 3, and 4, and after the paving was completed the city issued its bonds in payment for the work. Default was made in payment of some of the bonds and interest, totaling the sum of $10,000. In September, 1921, the mayor and city council of the city, proceeding upon the theory that these paving bonds were general obligations of the city, took the initial steps under section 426, Rev. St. 1913, to take up the defaulted bonds and interest by the issuance of funding bonds. Notice of the proposed action was duly given as provided by law. Certain taxpayers filed objections to this course. The objections, together with a statement of facts and the proceedings before the city council, were transferred to the district court of the county as provided by law. Later Lura F. Alexander, the holder of one of the defaulted bonds, intervened, as did also J. H. Bailey, another objecting taxpayer. Different reasons are assigned by the objecting taxpayers why the funding bonds should not be issued, but they all present the one main question, whether the paving bonds are the general obligations of the city, or only of the respective paving districts. The trial court was of the opinion that the paving bonds were not the general obligations of the city, and adjudged that the city authorities were without power to issue the proposed bonds. From this judgment the intervener, Lura F. Alexander, appeals. The attorney general made an argument in behalf of the state in support of the issuance of the funding bonds. The state's interest in the controversy arose out of the fact that a large amount of the school funds are invested in bonds of a similar character. We are also favored with a brief filed as *amici curiæ,* supporting the issuance of the funding bonds.

Alexander v. Bailey.

The paving bonds in question were identical in form except as to dates, amounts, and numbers of the paving districts, and, omitting portions thereof immaterial to the present issue, recite as follows: "The city of Red Cloud * * * hereby acknowledges itself to owe, and, for value received, promises to pay to bearer * * * the sum of——— dollars, * * * together with interest thereon at the rate of 6 *per cent. per annum,* payable semi-annually, * * * until the principal sum shall have been paid, upon presentation and surrender of the proper interest coupons hereto attached as they severally become due. And for the prompt payment of this bond at maturity, and the interest instalments as they become due, the full faith, credit and resources of the city of Red Cloud are hereby irrevocably pledged. * * * This bond, and others of its series, is issued by the said city of Red Cloud for the purpose of paying for the cost of paving of streets in paving district number—— of said city, by authority of and in full compliance with the laws of the state of Nebraska governing said city and by virtue of ordinances and resolutions duly enacted as required by law. And it is hereby certified and recited that all things required to be done precedent to and in the issuance of this bond have been done and performed in regular and due form and time as required by law, and that the total indebtedness of the said city of Red Cloud, including this issue of bonds, does not exceed any constitutional or statutory limitations, and that a sinking fund has been created for the payment hereof and interest. In witness whereof, the said city of Red Cloud, Nebraska, by its mayor and city council has caused this bond to be signed," etc.

These bonds were issued under authority of section 5110, Rev. St. 1913, as amended by chapter 50, Laws 1919. This section of the statute is entirely too long to set out at length in an opinion, but, in so far as it bears upon the question in hand, it may be said to confer upon cities of the second class the powers, as follows: (1) To pave streets. (2) To create improvement districts for the purpose of paving.

(3) To levy special assessments upon property abutting on, or specially benefited by, the paving. (4) To issue bonds or warrants of the city to pay the cost of paving, said bonds to be called "District Paving Bonds of District Number ——." (5) To constitute the special assessments a sinking fund for the payment of the bonds or warrants. (6) To issue bonds to pay for paving intersections. (7) To make partial payments as the work progresses by issuing warrants redeemable when the bonds are sold.

The objectors contest the proposed action of the mayor and city council upon two main grounds: First, that the special assessments provided for by statute is the fund out of which the paving bonds can be paid; and, second, that the paving statute does not specifically authorize the levy of a general tax to pay such bonds.

With respect to the first objection, we think it may be said that the statute clearly gives to the city the right to pave its streets. The exercise of this right clearly implies the right to create valid obligations on the part of the city to pay for such improvement. There is nothing in the statute which limits the power of the city to contract for paving and to make payment therefor only out of money collected from special assessments. There is nothing in the statute which says that a contractor to do paving work for the city must look only for his pay to the proceeds of special assessments. The case of *Pine Tree Lumber Co. v. City of Fargo*, 12 N. Dak. 360, is in point. In that case it is said:

"As between the city and the parties with whom it contracted to furnish the labor and material and to pave its streets, the city had power to render itself generally liable, notwithstanding the cost of the improvement was to fall ultimately upon the owners of abutting property. * * * The contractor is not in privity with the property owners, and has no means of enforcing collection against them. He looks alone to the city. There is nothing in the statute which imposes upon the person to whom the contract is let to pave the streets the requirement to look alone to the

proceeds of the special assessments for his pay, or limiting his recovery to the funds realized therefrom."

One of the leading cases upon the point involved is *United States v. Fort Scott*, 99 U. S. 152. In that case, it is said:

"It is true that section 17 declares that 'for the payment of said bonds' assessments shall be made 'upon the taxable property chargeable therewith;' that is, 'on all lots and pieces of ground to the center of the block, extending along the street or avenue, the distance improved.' But it is neither expressly nor by necessary implication provided that the holder of the bonds may not be paid in some other mode, or that the city will not, under the authority derived from other sections of the statute, comply with its promise to pay the bonds, with interest, at maturity. As between the city and its taxpayers, it was certainly its duty, through the council, to provide, if practicable, payment by taxation upon the property improved, rather than upon all the taxable property within its corporate limits. But the duty to make such distribution of the burden of special improvements did not lessen its obligation, in accordance with its express agreement, to pay the interest and principal of the bonds at maturity. * * * There is no reservation, as against the purchasers of the bonds, of a right, under any circumstances, to withhold payment at maturity, or to postpone payment until the city should obtain, by special assessments upon the improved property, the means with which to make payment, or to withhold payment altogether, if the special assessments should prove inadequate for payment. Experience informs us that the city would have met with serious, if not insuperable, obstacles in its negotiations had the bonds upon their face, in unmistakable terms, declared that the purchaser had no security beyond the assessments upon the particular property improved."

For other authorities to the same general effect, see *Vickrey v. City of Sioux City*, 115 Fed. 437; *Rialto Irrigation District v. Stowell*, 246 Fed. 294; *State v. Commis-*

*sioners,* 37 Ohio St. 526; *Mutual Benefit Life Ins. Co. v. City of Elizabeth,* 42 N. J. Law, 235; *Colby v. City of Medford,* 85 Or. 485. From these authorities we conclude that where a city of the second class issues its bonds, designated as "paving district bonds," under the provisions of section 5110, Rev. St. 1913, as amended by chapter 50, Laws 1919, which authorizes such cities to pave streets, and assess the cost thereof upon property in the paving district in proportion to benefits, and where the statute contains no provision that such bonds shall be payable only out of the funds realized from such assessment, and where neither the bonds nor the ordinance authorizing the same contain such a declaration, and where the bonds purport on their face to be the general obligations of the city, the city is bound for their payment.

The objectors next urge that there is no express authority given by statute for the levy of a general tax to pay for paving bonds. As before pointed out, however, the city is given authority to pave its streets. Where a statute authorizes a city to pave streets, and such statute contains no restrictions to the contrary, there arises an implication that such city is authorized to enter into contracts for the performance of the work, and also to pay for the same by a general tax levy. In *United States v. New Orleans,* 98 U. S. 381, it is said:

"Indeed, it is always to be assumed, in the absence of clear restrictive provisions, that when the legislature grants to a city the power to create a debt, it intends that the city shall pay it, and that the payment shall not be left to its caprice or pleasure. When, therefore, a power to contract a debt is conferred, it must be held that a corresponding power of providing for its payment is also conferred. The latter is implied in the grant of the former, and such implication cannot be overcome except by express words excluding it."

The same principle is announced in *Loan Ass'n v. Topeka,* 87 U. S. 655; *Minden-Edison Light & Power Co.*

v: *City of Minden*, 94 Neb. 161; Dillon, Municipal Corpora-
tions (5th ed.) sec. 237.

It is also urged in behalf of the objecting taxpayers that
an injustice will result from the levy of a general tax, be-
cause certain of the property owners within the district
have paid their assessments in full, and also because other
taxpayers will be compelled to bear some part of the bur-
den when their property is not specially benefited.  It
would seem a sufficient answer to this argument that the
special assessments are questions solely between the city
and its taxpayers, with which the bondholders have no
concern.  If the special assessments were levied in suf-
ficient amount, and the property is sufficient in value to
pay them, no loss should result to the city as a whole, if it
will faithfully enforce its liens; but, if loss should result,
there is less injustice if it fall upon the citizens who have
the use and benefit of the paving whether they live in the
paving district or not, rather than upon an innocent bond-
holder who had no benefit from the paving, no recourse
upon any one, and no remedy to recover his money in case
the city should be relieved of responsibility upon its obli-
gations.

We conclude that the mayor and city council were au-
thorized to take up the defaulted bonds and interest by
the issuance of funding bonds, which are general obliga-
tions of the city.

The judgment of the court below is reversed and the
cause remanded, with directions to enter judgment in con-
formity with the views herein expressed.

REVERSED.