V. I. Daniels, appellee, v. City of Gering, appellant.

Filed February 21, 1936.   No. 29548.

*Howarth N. Olsen,* for appellant.

*Floyd E. Wright, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ.

Goss, C. J.

This case differs somewhat from the recently decided case of *Miller v. City of Scottsbluff, ante,* p. 440, 265 N. W. 415, in that the sewer districts involved here were formed under an earlier statute and in that this case was tried on its merits while that case was decided upon demurrer. This is an appeal by the city from a judgment in favor of the holder of unpaid warrants issued for the construction of sewers, where the sewer fund, established by the city to provide their payment, had failed. The uncollected sewer taxes had been wiped out by a foreclosure and sale by the county under the scavenger tax procedure.

The amended petition set up three causes of action to recover money claimed by plaintiff as owner of city warrants issued to provide payment for the construction of

.city sewers in three different districts in the year 1917. Each cause alleged the creation of a district, the construction of the sewer by a contractor who had secured the contract, the levy of the special assessment on the real estate benefited, the creation of a fund for the special districts into which fund the assessments were to be paid for the purpose of paying the cost of the improvement, the provision for warrants to be drawn, and the drawing of such warrants to be paid out of the fund as called in the order of their issuance.

The first cause relates to district number one. It alleges that, out of the money coming into the fund, warrants numbered 1 to 37, inclusive, were paid, the payment of the last numbered warrant being made April 18, 1930, since which date there has never been any money in the fund; that plaintiff is the owner and holder of warrants numbered 38 to 41, inclusive, and warrants numbered 44 and 45; and that there is due plaintiff on said warrants the sum of $5,161.45, with interest at 7 per cent. from January 20, 1933.

The second cause of action relates to district number two. It alleges that warrants were called and paid out of the fund in the order of their issuance, the last being number 68, which was paid December 16, 1925, since which time there has never been any money in the fund; that plaintiff is the owner and holder of warrants numbered 71 to 75, inclusive, and number 80; and that there is due plaintiff on the warrants in this cause of action $1,793.42, with interest at 7 per cent. from January 20, 1933.

The third cause of action relates to district number three. It alleges that warrants numbered 1 and 2 were paid out of the fund created, the latter on April 26, 1920, since which time there has never been any money in the fund; that plaintiff is the owner and holder of warrants numbered 4, 5 and 8, on which there is due $1,334.06, with interest at 7 per cent. from January 20, 1933.·

The amended petition on each cause set out that in 1928 the county of Scotts Bluff commenced its scavenger suit for

the collection of delinquent taxes, foreclosed and sold the lots for all the sewer taxes in the three districts and that the sale was confirmed in 1929; that none of the real estate sold for enough to pay anything into the sewer district funds and all of the special assessments were thereby canceled and that the contract price for construction of the sewers was the fair and reasonable value of the benefits received by the city as a result of the construction of the sewers; that the city has retained these benefits and paid for them except as to the warrants held by plaintiff, as heretofore pleaded, and has refused to pay the balance as demanded.

Defendant demurred to the petition, but its demurrer was overruled, whereupon defendant answered. The answer admitted some allegations of the petition and denied others. The effect of the answer was to raise two issues: First, that no cause of action arose on the warrants within the last ten years and therefore the cause of action was barred by the statute of limitations; second, that the warrants are not, do not purport to be, nor do they evidence, any obligation of the city of Gering; that the sewers were of no value or benefit to the city, and that all benefit, if any, was to the property within the respective sewer districts.

The issues were tried. The records were stipulated and received in evidence. This shows that plaintiff has invested in the warrants the amounts claimed. The only questions are whether the warrants, in the circumstances, were or became a general liability of the city, and, if so, whether recovery is now barred by the statute of limitations.

These sewers were constructed and the warrants evidencing their contract price were issued in 1917. Therefore they were devised under, and are ruled by, the statutes in force at that time, so far as applicable.

The sewer districts were created and the warrants were issued under section 5163, Rev. St. 1913. The section is too long to quote, but it authorizes the mayor and city council to levy special taxes against the lots in a created sewer district, to provide for their payment by bonds or by warrants,

and to provide that the special taxes shall constitute a sinking fund for the payment of such bonds and warrants, including interest thereon. It provides that "the entire cost of such sewers in any such street, avenue or alley shall be chargeable to the private property therein," etc. There is no statement contained in this statute indicating that it was intended to relieve the city from liability on the warrants in any and all circumstances. There is just the statement quoted that the entire cost shall be "chargeable" to the property specially benefited. The cost might in the first instance be chargeable to the property, but, in certain contingencies, the city might, nevertheless, be held liable for any failure to collect the taxes. The language of the statute does not prohibit that.

Then the preceding section 5162, Rev. St. 1913, gives the city power "to appropriate any and all moneys in the general fund against which there are no unpaid and outstanding warrants * * * for the purpose of conducting or aiding in the construction of a system of sewerage." This would seem to provide a source of payment for just such a liability as is argued here by plaintiff to have arisen under the assessment of the taxes by virtue of the provisions of section 5163, and under the facts as to the failure to collect them as established by the proofs on the trial of the case.

*Alexander v. Bailey,* 108 Neb. 717, 189 N. W. 365, was a suit to charge the city with general liability on paving bonds which had been issued under section 5110, Rev. St. 1913, authorizing such cities to pave streets, assessing the costs against the property according to benefits, the statute containing no provision that the bonds shall be payable only out of funds realized from the assessment. The section relates to paving almost as section 5163 relates to sewers. It was held in that case that, where a statute authorizes a city to pave streets but contains nothing to the contrary, there arises an implication that the city is authorized to enter into contracts for the performance of the work and also to pay for the same by a general tax levy. In that case the city had taken the bond method of paying for the work.

Ultimately the bonds became defaulted by reason of the special assessments failing to create a fund sufficient to provide for their payment. The city, believing the bonds were a general liability of the city, refunded them with bonds which were issued on the theory that the original bonds were a general liability. The suit was a test, in advance, of the liability on the refunding bonds. The district court decreed that they were not a general liability. This court reversed the judgment and held that the bonds were a general liability of the city.

*Alexander v. Bailey, supra,* cites a case in point, from which we quote briefly: "As between the city and the parties with whom it contracted to furnish the labor and material and to pave its streets, the city had power to render itself generally liable, notwithstanding the cost of the improvement was to fall ultimately upon the owners of abutting property. * * * The contractor is not in privity with the property owners, and has no means of enforcing collection against them. He looks alone to the city. There is nothing in the statute which imposes upon the person to whom the contract is let to pave the streets the requirement to look alone to the proceeds of the special assessments for his pay, or limiting his recovery to the funds realized therefrom." *Pine Tree Lumber Co. v. City of Fargo,* 12 N. Dak. 360, 96 N. W. 357.

We refer, also, to other cases cited and reviewed in *Alexander v. Bailey, supra,* but particularly to *United States v. Fort Scott,* 99 U. S. 152, which says: "It is true that section 17 declares that 'for the payment of said bonds' assessments shall be made 'upon the taxable property chargeable therewith;' that is, 'on all lots and pieces of ground to the center of the block, extending along the street or avenue, the distance improved.' But it is neither expressly nor by necessary implication provided that the holder of the bonds may not be paid in some other mode, or that the city will not, under the authority derived from other sections of the statute, comply with its promise to pay the bonds, with interest, at maturity. As between the city and its taxpayers,

it was certainly its duty, through the council, to provide, if practicable, payment by taxation upon the property improved, rather than upon all the taxable property within its corporate limits. But the duty to make such distribution of the burden of special improvements did not lessen its obligation, in accordance with its express agreement, to pay the interest and principal of the bonds at maturity. * * * There is no reservation, as against the purchasers of the bonds, of a right, under any circumstances, to withhold payment at maturity, or to postpone payment until the city should obtain, by special assessments upon the improved property, the means with which to make payment, or to withhold payment altogether, if the special assessments should prove inadequate for payment. Experience informs us that the city would have met with serious, if not insuperable, obstacles in its negotiations had the bonds upon their face, in unmistakable terms, declared that the purchaser had no security beyond the assessments upon the particular property improved."

It might be argued that there is a difference between paving and sewers, because the latter are almost entirely for the benefit of the lots they serve, while the former is to a larger extent for the benefit of all in the city who may use the streets. However, the legal principles applying to both are the same, and, in a very practical sense, the welfare of the entire community is concerned in the health and sanitation involved in sewer provisions for every inhabited part of the city.

To the argument that injustice will result from levying a general tax which will fall upon all taxpayers and particularly upon those within the sewer district who have already paid their special taxes, the answer is that the law makes the special assessments a matter between the city and its taxpayers with which bondholders, and, in this case, warrant holders, are not concerned. If special assessments are levied in sufficient amount, upon property of sufficient value, no loss will result when the city faithfully collects the taxes. If a loss must result, less injustice follows when

the loss is shared by all taxpayers than if it be made to fall upon an innocent warrant holder, who had no special benefit from the sewer, no recourse upon any one, and no remedy whatever if the city should be relieved of responsibility upon its obligations.

The statute of limitations against the claims is urged. The statute of limitations never was applicable until, after the sewers were constructed in 1917 and the warrants issued, the fund was actually created. In *Rogers v. City of Omaha,* 82 Neb. 118, 117 N. W. 119, the syllabus says: "The statute of limitations does not commence to run against warrants issued by a municipal corporation, payable out of a special fund to be created, until such fund has in fact been created, and there is sufficient money in the fund with which to pay the warrants."

In *Bacon v. Dawes County,* 66 Neb. 191, 92 N. W. 313, the syllabus says: "No right of action accrues upon county warrants until there is money for their payment in the fund upon which they are drawn, or the proper authorities have had opportunity to provide funds to pay them, and have neglected to do so."

The evidence shows that the fund was created and, as fast as there was sufficient money paid in, earlier warrants were paid. They were paid as late as 1930 in one of the districts, in 1925 in another, and in 1920 in the other. But it was not until 1929 or 1930, after the sale of all the delinquent tax land under the scavenger act, that the city learned that the special taxes could never supply the fund. Then, for the first time, the city attempted to repudiate its liability. As to the unpaid warrants involved here, the city had in fact created no fund. That fact was never discovered or disclosed until too late to defend on that ground. This suit was commenced on January 21, 1933. The statute of limitations had not run.

The judgment of the district court is

AFFIRMED.