COUNTY OF GARDEN, APPELLEE, V. GRACE SCHAAF ET AL., AP-
PELLEES. IMPLEADED WITH BOARD OF EDUCATIONAL LANDS
AND FUNDS OF THE STATE OF NEBRASKA, APPELLANT.

17 N. W. 2d 874

FILED MARCH 2, 1945. No. 31844.

*Walter R. Johnson, Attorney General, H. Emerson Kok-
jer* and *Robert A. Nelson,* for appellant.

*R. H. Beatty, M. M. Maupin, Zelma Derry, E. E. Rich-
ards* and *H. J. Curtis, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,
YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is a tax foreclosure brought by Garden county on
tax sale certificates purchased at private tax sale. The de-
cree determined the amount due and directed the sale of
the property as upon execution, and barred and foreclosed
all defendants of all rights against said property or to levy
any future assessments against the land in satisfaction of
any outstanding bonds or warrants or judgments existing
against the same. From this decree the Board of Educa-

tional Lands and Funds of the State of Nebraska appealed to this court.

The petition recites that, the taxes and assessments on certain real estate having become delinquent, said lands were advertised for sale by the county treasurer, offered at public sale, and unsold for want of bidders; that proper return having been made to the county clerk, the county board of plaintiff county, by proper resolution, purchased the same at private tax sale, and brings this action, not only on behalf of itself, but for the benefit of all governmental subdivisions entitled to participate in the distribution of the proceeds of the taxes and special assessments described in said tax certificate.

The Board of Educational Lands and Funds of the State of Nebraska was made one of many defendants. Several pages of the petition described in detail all of the circumstances relating to the issuance and sale of all of the bonds outstanding owned by the defendant Board, and alleged in the eleventh paragraph of said petition that such Board had no lien upon the real estate described therein.

To this petition the Board filed a demurrer, which was overruled. Therefore, the Board filed an answer, to which the plaintiff county filed a reply. Trial was had upon the issues thus joined.

The bill of exceptions shows that the North River Irrigation District, hereinafter called the District, was organized in 1919-1920, and was located along the North Platte river in Garden county. This irrigation district used water which was brought to its ditch through the Lisco ditch for some ten miles, and the North River Irrigation District proper began some eight miles west of Oshkosh and extended some five miles east along the North Platte river.

On April 1, 1920, the district issued $120,000 worth of bonds, which were purchased by the defendant, Board of Educational Lands and Funds, hereinafter called the Board, for the permanent school fund of the state of Nebraska. On June 1, 1922, $20,000 of additional bonds were issued, and purchased by the Board, and the District levied only

small assessments to pay some of the interest due on the bonds, and on July 1, 1930, new refunding bonds were issued for $140,000 principal and $5,000 interest, bearing interest at the rate of 6 per cent. Only a little of the interest was paid on this new bond issue, and when the delinquent interest amounted to $47,277 the whole issue of bonds was again refunded in the principal sum of $192,277, the interest rate being cut to 2 per cent. Interest on these second refunding bonds was paid up to $2,163.77, and at the time of trial in the district court in August, 1943, there was a total of $30,785.53 interest due, and the court entered a decree February 23, 1944, that the total amount due the Board upon the bonds of said District is $224,038.11, with interest at 6 per cent.

The amount found due the plaintiff on its tax sale certificate is $5,255.27, with interest at 7 per cent, together with attorney's fees of 10 per cent of that amount.

The evidence discloses that during the last 15 years no water has been delivered through this ditch to the eastern portion of the district, nor to the western portion for the last eight years, and that in many places the county has filled up the ditch and taken out the bridges over it, and that years ago, the last time any operations were conducted, it cost at least $1,000 a mile to clean out the ditch, and it is estimated that it would take $50,000 to dig out the ditch and put the bridges and flumes in again.

The local banker testified that there has been no *bona fide* sale of lands located under the ditch for 10 or 15 years, and that the only sales have been transfers through foreclosure or execution sales; that the hay meadow land under the ditch will produce half a ton of hay to the acre, and would be worth $20 to $30 an acre, and that there are about 500 acres of such hay land, while the farm land under the ditch is not worth over $15 an acre on the average, and that the assessed valuation on all of the land under the ditch is far above its actual value.

By stipulation of the parties, the foreclosure proceeded upon the first cause of action, and it was agreed that the de-

cision rendered in this case shall apply to the issues joined in the other eight cases, with a total of 78 causes of action; that the 78 tax certificates cover all of the land within the boundaries of the District, with five exceptions of small tracts, amounting to 51.7 acres, upon which the taxes have all been paid. Upon much of this land no taxes at all have been paid since 1920.

The appellant assigned as errors that the decree was contrary to law and the evidence; that the court erred in holding that through this action the county could cancel and annul the assessment of future levies for payment of this bonded indebtedness which were not due at the time of the commencement of this action.

It is stated by the parties to the case at bar that the exact question involved in this case has never been passed upon by our court.

It should first be noted that this action was brought by Garden county under sections 77-2040 and 77-2041, Comp. St. Supp. 1941, and that these two sections were repealed by L. B. No. 38, chapter 176, Laws 1943, p. 614, but that section 19 of said bill provides: "This act shall in no manner affect pending actions founded on or growing out of any statute repealed by this act." Therefore, this case will be disposed of in the same manner as though said sections of the statutes had not been repealed.

It appears that what is now sections 24-319 and 24-321, R. S. 1943, were amended in 1941 to provide how suit might be brought when the Board of Educational Lands and Funds of the state of Nebraska is the owner of any bonds of an irrigation district, and to provide for service of summons. This suit is brought in accordance with such amendments.

The fact that the Board is acting as trustee for the permanent school fund of the state and is the owner of the bonds outstanding places it in no different position than if the bonds were owned by a private purchaser.

The parties stipulated at the trial on August 13, 1943, that there was then past due and unpaid, of the last refunding issue, ten bonds in the face amount of $10,000, and there

was past due interest on all the bonds to the amount of $30,785.53. However, the trial judge entered a finding in the decree rendered on February 23, 1944, that the total amount due to the Board on all of the bonds, both those due and those not yet due on the date of the decree, was the total sum of $224,038.11, with interest thereafter at 6 per cent, and decreed in effect that this constituted a second lien against the land in the district, subject only to the lien of Garden county for general taxes and special assessments. The decree then barred the Board from any attempt to make further levies or assessments against the land in the district for the payment of outstanding bonds.

There is no question as to how the proceeds of a tax foreclosure sale brought by the county should be applied. Sections 77-208 and 77-209, R. S. 1943, provide that general taxes are a first lien on real estate, and special assessments are subject to the lien of the general taxes. In the case of *Douglas County v. Shannon,* 125 Neb. 783, 252 N. W. 199, this court held: "The proceeds of a tax foreclosure sale, brought by the county, should be applied, first, to the payment of costs; second, to the payment in full of all general taxes of the state, county, school district, and other governmental subdivisions (Const. art. VIII, sec. 4), and the remainder, if insufficient to pay all special assessments, shall be prorated equitably upon all special assessments due on said real estate."

The appellant cites the case of *Alexander v. Bailey,* 108 Neb. 717, 189 N. W. 365, which is a suit on district paving bonds, and this court held that the statute contained no provision that such bonds shall be payable only out of the funds realized from assessments, and where such bonds purport on their face to be the general obligations of the city, the city is bound for their payment in the event the lien of the special assessments fails for any reason.

But it is different with an irrigation district organized under the existing laws of this state. Irrigation district bonds are general obligations of the district, payable out of special assessments to be levied upon the property in the

district. When such assessments are regularly levied in accordance with statutory provisions, they become a lien against the specific real property against which they are assessed from and after October 1 in the year in which they are assessed, as provided in section 46-140, R. S. 1943. See *Erickson v. Nine Mile Irrigation District,* 109 Neb. 189, 190 N. W. 573.

The appellant in the case at bar insists that the school funds of this state were in good faith invested in these irrigation district bonds, and since the original purchase of bonds in 1922 no part of the principal investment has ever been paid, and only a small portion of the interest has been paid, in spite of the fact that the interest rate has been voluntarily reduced from 6 per cent per annum to 2 per cent, and that while, through this tax foreclosure, the lien against the property as to levies which have been made prior to the institution of the present action is discharged, the District is liable for the bonded indebtedness, and it is the duty of its officers to continue to make the levies in the future in order to discharge their legal obligations.

It is argued by appellee that the Nebraska supreme court has held that the purchaser under a tax sale foreclosure receives a new title in the nature of an independent grant by the sovereign authority, which title is free from any encumbrances, claims, or equities connected with the prior title, and the title is free from any claim or equity existing against it. *Coffin v. Old Line Life Ins. Co.,* 138 Neb. 857, 295 N. W. 884. See, also, *State ex rel. City of Great Falls v. Jeffries,* 83 Mont. 111, 270 Pac. 638; *Warren v. Blackman,* 62 S. D. 26, 250 N. W. 681.

This is a correct statement of the law. There is a special statute covering irrigation bonds (R. S. 1943, sec. 46-1,-101), which provides: "Such bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district and all the real property of the district shall be and remain liable to be assessed for such payments as herein provided, * * * ." This provision appears to leave no doubt that the property in the

irrigation district remains liable for the payment of assessments to be made in the future.

And, further, we find a definite provision in section 46-190, R. S. 1943, which provides that, even when an irrigation district is discontinued and all of its property is sold, "In case the amount realized from the sale of such district property, together with other money of the district, shall be insufficient for the payment of all the indebtedness of the district, assessments shall continue to be made against the lands included in the district in the manner provided by law for assessments to pay bonds and other indebtedness of irrigation districts, until a sufficient amount is raised to fully pay all obligations of such district."

In an opinion in the Eighth Circuit Court of Appeals, written by Judge Munger, it was held that, after reasonable efforts have been made to collect the first levy on an irrigation district, an additional levy can be made because of the failure of some taxpayers to pay the first levy, and this does not violate constitutional provisions for uniform taxation. *Norris v. Montezuma Valley Irrigation District,* 248 Fed. 369.

The only method by which these irrigation bonds can be paid is by revenue derived from successive annual assessments upon the real property within the district, as specifically provided in section 46-1,101, R. S. 1943. There is no provision in our laws which makes the total amount of such outstanding irrigation bonds a lien upon the land.

"The general rule is that taxes are not a lien unless expressly made so by statute or ordinance; and a statute to create a tax lien must expressly provide for the lien, or the implication must be so plain as to be equivalent to positive language. When liens are expressly created they are not to be enlarged by construction." 3 Cooley, Taxation (4th ed.) sec. 1230, p. 2451.

The decree entered in the district court in the instant case wrongly barred and foreclosed the defendant Board from ever seeking to compel the North River Irrigation District to voluntarily or otherwise attempt to levy or assess

future or further levies and assessments against the land in said district for the payment and satifaction of any outstanding bonds, warrants or judgments against the same, or for any purpose whatsoever save and except maintenance and repairs.

As we have heretofore set out, neither the principal or interest due on these bonds, nor any part thereof, is a lien against the land in the district. Nor does a lien arise until the annual assessment and levy have been duly made in accordance with section 46-140, R. S. 1943.

Plaintiff insists that, as little, if any, of the taxes on the land in this irrigation district have been paid for over 20 years, and as its assessed value is far in excess of its real value, no purchasers can ever be found unless the land can be sold free of the burden of the outstanding bonds, for which reason it will be practically and permanently removed from payment of the actual costs of government.

This court concedes that such a situation, if it should arise in the future, would be serious. However, where the application of the rules of law as appear in our statutes presents a situation which affects the public interests adversely, such a condition is a question for the legislature to either correct or provide a remedy, as it is beyond the function of the court.

For the reasons set out herein, the decree and judgment of the trial court are hereby reversed, and the district court is directed to enter a judgment in accordance herewith.

REVERSED.