Day, J.
 

 The question presented is, When are general levies required in order to pay interest and principal on bonds issued in anticipation of collection of special assessments, the bonds not requiring payment solely from special assessment but providing that “the faith, credit and revenue of said Village are hereby irrevocably pledged for the prompt payment of the principal and interest thereof at maturity.”
 

 The relator claims that general taxes should be levied coincidently and continuously with the levy of the special assessments. The respondent claims that general levies should be made only after the exhaus
 
 *462
 
 tion of the special assessment liens, and then only to the extent of the deficiency.
 

 First, does mandamus lie to compel the taxing officials to make the levies in question, if relator be entitled thereto?
 

 The case of
 
 State, ex rel. Huntington National Bank,
 
 v. Putnam,
 
 Mayor,
 
 121 Ohio St., 109, 167 N. E., 360, decides this question in the affirmative. See, also,
 
 State, ex rel. Robertson,
 
 v.
 
 Board of Education of Perrysburg Township,
 
 27 Ohio St., 96.
 

 All the bonds involved herein contain substantially this provision:
 

 “And it is hereby certified and recited, that all acts, conditions and things necessary to be done precedent to and in the issuing of these bonds, in order to make them legal, valid and binding obligations of said Village, have been done, happened and performed in regular and due form as required by law;
 
 that the faith, credit and revenue of said Village are hereby irrevocably pledged for the prompt payment of the principal and interest thereof at maturity;
 
 that no limitation of indebtedness or taxation, either statutory or constitutional, has been exceeded in issuing these bonds; and that due provision has been made for levying and collecting annually by taxation an amount sufficient to pay the interest on these bonds as it falls due and to provide a fund for the redemption of said bonds at maturity.”
 

 The bonds were issued to meet obligations arising from public improvements, hence “conducive to the public health, convenience or welfare,” as provided in Section 3812, General Code, and were properly payable from the proceeds of general taxation, the municipality having duly authorized such public improvements.
 

 The issuing of bonds in anticipation of special assessments is authorized by Section 2293-24, General Code, where it provides that such bonds “shall be full
 
 *463
 
 general obligations of the issuing subdivision, and for the payment of the principal and interest of same the full faith, credit and revenues of such subdivision shall be pledged.”
 

 We find no statutory provision distinguishing between bonds issued in anticipation of special assessments and those in anticipation of general taxes as to the obligation upon the issuing subdivision to pay at maturity. Section 2293-24 expresses the intention not to distinguish, but rather it precludes distinction.
 

 Of course by Section 2293-26, General Code, if special assessments are available, the same shall be used for the payment of interest and principal due, but this does not excuse the issuing subdivision from providing “for the levying of a tax sufficient in amount to pay the interest on and retire at maturity all of the bonds covered by said resolution or ordinance.”
 

 Bonds of political subdivisions of Ohio are general obligations, and under the law funds must be provided by the issuing subdivision for the payment of interest and principal at maturity. Bonds issued in anticipation of the collection of such assessments are not an exception to this rule, although the issuing subdivision may reduce the amount to be levied in any year by the amount available from special assessments, as provided in Section 2293-26, General Code, as above noted.
 

 In the case of
 
 State, ex rel. Bowman,
 
 v.
 
 Board of Commrs. of Allen County,
 
 124 Ohio St., 174, at page 202, 177 N. E., 271, the language of the opinion, “that the credit of the entire county may legally be pledged for the deficiency in the payment of bonds issued to pay for the improvement in the first ’ instance, after exhaustion of special assessments,” is but a declaration of the provisions of Section 2293-26, General Code, found in the Uniform Bond Act. The conclusions reached and the questions discussed in both the majority and the minority opinions are not involved in
 
 *464
 
 this case. If the proceeds of special assessments are available, of course the same should be applied; but, if they are not available, that does not change the plain language of the bond, statute and Constitution, which pledges the full- faith, credit and revenue of the taxing district, or subdivision, to meet interest and principal when due.
 

 That bonds of taxing subdivisions are general obligations for which the full faith, credit and revenue of the subdivision are pledged — and bonds issued in anticipation of the collection of special assessments are treated as standing upon the same basis — is recognized by early decisions of this court. In the case of
 
 State
 
 v.
 
 Commissioners of Fayette County,
 
 37 Ohio St., 526, a writ of mandamus was sought to compel the commissioners of Fayette county to levy a tax to pay the amount due on road bonds which had been issued under a statute whereby special assessments had been levied for special payment against benefited lands. The second paragraph of the syllabus of that case reads as follows: “When, from any cause sufficient money be not realized from such local assessments to pay the debt so created, it is the duty of the commissioners to levy a tax therefor upon all the taxable property of the county.”
 

 See, also,
 
 State, ex rel. Moran Bros.,
 
 v.
 
 Commissioners and Auditor of Clinton County,
 
 6 Ohio St., 280, where a railroad company, for whose stock the commissioners of the county had subscribed, issuing the bonds of the county to the railroad company in payment therefor, had defaulted in payment of interest. It was held that “the holders of the bonds issued to and negotiated by the railroad company were entitled to the interest from the county, and that the county must look to the railroad company to be reimbursed the amount paid by the county. That it was the duty of the county commissioners, in case the railroad company did not provide for the payment of the interest,
 
 *465
 
 to assess a tax sufficient to meet it, and, in default thereof, a holder of a bond, as relator, could enforce the duty of the county commissioners by mandamus.”
 

 Under Section 11 of Article XII of the Constitution of Ohio, bonds issued in anticipation of the collection of special assessments are as much a “bonded indebtedness of * * * any political sub-divisions ” as any other bonded indebtedness of the subdivision.
 

 We find no statutory provision, either in the Uniform Bond Act, Sections 2293-1 to 2293-37,. inclusive, General Code, or in the Uniform Tax Levy Law, Sections 5625-1
 
 et seq.,
 
 General Code, which justifies the conclusion that bonds issued in anticipation of special assessments are to be distinguished from other bonds with respect to the duty of the taxing subdivision to provide funds for their payment, when there are not sufficient collections available from special assessments to meet interest and principal due.
 

 Coming now to the question whether taxes for debt charges are preferred to those for current expenses, we are of opinion that interest and principal due on bonds such as are involved in this case are entitled to preference, within the statutory and constitutional limitations. Such was the conclusion in the case of
 
 State, ex rel. Southard, Dir. of Health,
 
 v.
 
 City of Van Wert, ante,
 
 78, 184 N. E., 12, the statute (Section 5625-15, General Code) providing for current expenses outside the fifteen-mill limitation.
 

 Section 11 of Article XII of the Ohio Constitution provides: “No bonded indebtedness of the state, or any political subdivisions thereof, shall be incurred or renewed, unless, in the legislation under which such indebtedness is incurred or renewed, provision is made for levying and
 
 collecting annually
 
 by taxation an amount sufficient to pay the interest on said bonds, and to provide a sinking fund for their final redemption at maturity.”
 

 This section was considered by this court in the case
 
 *466
 
 of
 
 Link
 
 v.
 
 Karb, Mayor,
 
 89 Ohio St., 326, 104 N. E., 632, the second paragraph of the syllabus reading: “Section 11 of Article XII of the Constitution of Ohio requires the taxing authority of any political subdivision of the state proposing to issue bonds to provide at the time the issue of bonds is authorized, for levying and
 
 collecting annually
 
 by taxation an amount sufficient to pay the interest on the bonds proposed to be issued and to provide for their final redemption at maturity. This provision made at the time the issue of bonds is authorized is mandatory on all subsequent taxing officials of that political subdivision during the term of the bonds.”
 

 This construction thus given this constitutional provision was made prior to the amendment and repeal of Section 5649-1, General Code, and indicates its mandatory character.
 

 Attention may also be called to Sections 5625-21 and 5625-23, General Code, requiring the county auditor to lay before the budget commission the annual tax budgets submitted to him. The latter section contains this mandatory language: “If any debt charge is omitted from the budget, the budget commission
 
 shall
 
 include it therein.”
 

 Thus, in setting up the budgetary procedure, the Legislature has carried into and retained in the General Code the statutory provisions reiterating the constitutional mandate of Section 11, Article XII of the Constitution, as construed by this court.
 

 It may be noted that the same act which repealed Section 5649-1 enacted Sections 5625-21 and 5625-23, the present budgetary law, 112 Ohio Laws, 391.
 

 The principles announced in
 
 Rabe
 
 v.
 
 Board of Education of Canton School District,
 
 88 Ohio St., 403, 104 N. E., 537, have not been departed from by this court. The language of the opinion, at pages 422 and 423, is applicable in the present instance, although the. amendment to Section 11, Article XII, had no appli
 
 *467
 
 cation in the
 
 Babe case:
 
 “At this time, under the amendment to the Constitution (Section 11, Article 12) which provides that no bonded indebtedness of the state or any political subdivision thereof shall be incurred or renewed, unless in the legislation under which such indebtedness is incurred or renewed provision is made for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds and provide for a sinking fund for their final redemption at maturity, it is of the utmost importance that at the time of the incurring of such indebtedness the other needs of the political subdivision proposing to issue the bonds should be taken into account, for this levy must continue during the term of the bonds in an amount sufficient to pay the interest and provide a sinking fund for their final redemption, even though the amount should exhaust the entire income available from taxation and without regard to the current expenses. In other words, under this provision of the constitution, the payment of interest and the retirement of bonds are to be provided for first, and the current expenses become a secondary consideration.”
 

 This decision, made prior to the amendment of Section 5649-1, General Code, when the same contained nothing about priorities, was followed by
 
 State, ex rel. Heald,
 
 v.
 
 Zangerle et al., Budget Commrs.,
 
 94 Ohio St., 447, 115 N. E., 1013, the second paragraph of the syllabus in that case reading: “The provision of Section 5649-1, General Code, that the taxing authorities in each taxing district of the state shall levy a tax sufficient to provide for sinking fund and interest purposes, requires the county budget commissioners to certify to the county auditor a tax sufficient for such purposes, regardless of other needs of the taxing district. Ra
 
 be et al.
 
 v.
 
 Board of Education,
 
 88 Ohio St., 403, approved and followed.”
 

 In view of the fact that the provisions of Section
 
 *468
 
 5649-1 were carried into Sections 5625-21 and 5625-23, Gfeneral Code, the syllabus above quoted is entirely applicable. In the opinion, the language of Donahue, J., at page 450, is pertinent: “It is not seriously contended that the amount certified is excessive. The only reason offered by the defendants for not certifying the full amount to the county auditor is that if this is done a sufficient sum cannot be provided, within the limitations fixed by law, to meet the current expenses of city government. That is unfortunate, but it does not authorize the budget commissioners to ignore the law.”
 

 Our attention is called to the adjudications of other jurisdictions, but we do not deem it necessary to discuss those cases, in view of the fact that so much depends upon the constitutional and statutory law of the states from which such cases come. We have found no case in any jurisdiction where any court of last resort has held that a tax need not be levied to pay general obligation bonds at maturity. There are cases, where special assessment bonds were not general obligations of the issuing subdivision,.in which the courts have held that after exhaustion of special assessment liens a general tax may be levied, but such special assessment bonds, which are not general obligations, are not here under consideration.
 

 Attention may be called to the case of
 
 United States
 
 v.
 
 City of Fort Scott,
 
 99 U. S., 152, 161, 25 L. Ed., 348, involving city improvement bonds, reciting the city’s promise to pay, in which case it was held that such bonds bind all the city’s taxable property, though issued under an ordinance declaring them payable solely from special assessments on the property improved.
 

 See, also,
 
 Colby
 
 v.
 
 City of Medford,
 
 85 Or., 485, 167 P., 487, holding city bonds issued to pay special benefit assessments absolute obligation of the city, whether assessments collected or not;
 
 Fairfax Drainage Dist. of Wyandotte County
 
 v.
 
 Reimer,
 
 114 Kan., 473, 219 P., 268, holding drainage district is primarily liable to
 
 *469
 
 pay bonds when due whether or not special assessments levied have been collected;
 
 Vickrey
 
 v.
 
 City of Sioux City
 
 (C. C.), 115 F., 437;
 
 United States, ex rel. Masslich,
 
 v.
 
 Saunders, City Treas.,
 
 124 F., 124, 59 C. C. A., 394;
 
 Mutual Benefit Life Ins. Co.
 
 v.
 
 City of Elizabeth,
 
 42 N. J. Law, 235.
 

 The case of
 
 Board of Commissioners of Franklin County, Ohio,
 
 v.
 
 Gardiner Sav. Inst.
 
 (C. C. A.), 119 F., 36, although not a mandamus case, is applicable in principle. This case involved the authority of the commissioners of Franklin county to levy a general tax for the payment of the bonds issued for a certain road improvement. It was insisted on behalf of the bondholders that, notwithstanding a method of assessment upon the property abutting upon the road is set forth, which may provide a means of ultimate payment as between the county and the property owners, the bonds constitute a general indebtedness of the county, to be collected by general taxation. On the other hand, it was contended that as the bonds, on their face, stipulate that they shall be paid out of the assessments on the property, and, no authority being conferred in the act authorizing the improvement to incur a general liability of the county, the only obligation of the county is to use diligence to collect and to apply the assessments for the benefit of the bondholders. In the opinion, at page 46, it is said:
 

 “The obligation to pay is unconditional, and there is no statement in the act or in the bond that the holder shall await payment until assessments can be collected. It is not unlikely that the bonds could not have been negotiated, had the act required, and the bonds stated that payment was to be made only from 'assessments. We do not think anything short of such clear expression of limitation of the right of the bondholder to the assessments on the property, without any general liability on the bonds by the county, will have the effect
 
 *470
 
 to thus restrict the obligation of the contract.
 
 State
 
 v.
 
 Fayette County Board of Commrs.,
 
 37 Ohio St. 526;
 
 United States
 
 v.
 
 Ft. Scott,
 
 99 U. S. 152, 25 L. Ed. 348;
 
 United States
 
 v.
 
 [County Court of] Clark County,
 
 96 U. S. 211, 24 L. Ed. 628. These obligations upon which the money was received by the county being authorized by the law, and the county having defaulted in payment, a money judgment must be rendered upon the bonds unless some good defense is shown.”
 

 In the case of
 
 Shepard
 
 v.
 
 Barron,
 
 194 U. S., 553, at page 555, 24 S. Ct., 737, 48 L. Ed., 1115, reference is made to the case of
 
 Board of Commissioners of Franklin County, Ohio,
 
 v.
 
 Gardiner Sav. Inst., supra,
 
 but the judgment rendered in that case was never disturbed.
 

 In
 
 United States, ex rel. Masslich,
 
 v.
 
 Saunders, City Treas. et al.
 
 (C. C. A.), 124 F., 124, on page 131, attention is called to the following: “It issues the district bonds, charges itself and all the taxable property within it with liability to discharge its express promise to pay them, pays the cost of the improvement with the proceeds of their sale, and then seeks to recover a portion of the money to pay the bonds from the collection of the special taxes. In either case the faith and credit of the city are necessarily pledged in the first instance to pay the cost of the improvement, and in the latter case to pay the bonds issued to discharge the primary liability. In neither case can the remedy of the creditors, whether they are contractors to make the improvements or the holders of the district bonds, be limited to the special taxes upon the abutting property, in the absence of an express stipulation to that effect in the contracts or in the bonds, or in the law under which the contracts and bonds are made.
 
 United States
 
 v.
 
 Ft. Scott,
 
 99 U. S. 152, 159, 161, 25 L. Ed. 348;
 
 Hitchcock
 
 v.
 
 Galveston,
 
 96 U. S. 341, 24 L. Ed. 659.”
 

 The following cases may also be cited:
 
 City of Su
 
 
 *471
 

 perior
 
 v.
 
 Marble Sav. Bank of Rutland, Vt.
 
 (C. C. A.), 148 F., 7;
 
 Alexander
 
 v.
 
 Bailey,
 
 108 Neb., 717, 189 N. W., 365;
 
 City of Wyandotte
 
 v.
 
 Zeitz,
 
 21 Kan., 649;
 
 Commonwealth, ex rel. Whelen,
 
 v.
 
 Select and Common Councils of City of Pittsburgh,
 
 88 Pa., 66.
 

 In the case of
 
 Klemm
 
 v.
 
 Davenport, Mayor,
 
 100 Fla., pt. 1, 627, 129 So., 904, 70 A. L. R, 156, we find the following language in the syllabus:
 

 “The iaw is well settled in this country that as between the bondholders and the municipality the bondholder may enforce the payment of his bonds as general obligations of the municipality by an ad valorem tax on all property therein while as between the municipality and the tax payer the law allows the municipality to place the ultimate burden on those specially benefited. * * *
 

 “The obligation of a municipality under Chapter 9298, Acts of 1923, is direct and general to pay the bonds duly issued for street improvements considered as an entire project, and the tax levy has reference to such improvements as a municipal purpose considered as a whole, and not with reference to property specially assessed for benefits to its value or use.”
 

 The language of Terrell, C. J., in the opinion, is a comprehensive statement of a situation not unlike that urged in the present case.
 

 Our conclusion is that bonds of a municipal corporation, issued in anticipation of the collection of special assessments for public improvements, reciting that the faith, credit and revenue of the corporation are pledged for their payment at maturity, are payable from general tax levies to be made by the proper officials, after crediting the amount due with funds available from the collection of special assessments, as provided by statute; and that, within constitutional and statutory limitations, the taxing authorities should make general levies upon the taxable property of such
 
 *472
 
 political subdivision so pledging its faith, credit and revenues for payment of the interest and principal due at maturity of such bonds.
 

 Demurrer to answer sustained.
 

 Weygandt, C. J., Allen, Stephenson, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.