Stephenson, J.
 

 As we view it, the law of this case is largely determined by the answer to one question, namely: Does Section 11, Article XII of the Constitution of Ohio, as amended, effective January 1, 1913, deny to the County Commissioners of Cuyahoga county the right to refund the county’s bonded indebtedness ?
 

 Section 11 of Article XII of the Constitution of Ohio, as amended, effective January 1, 1913, reads as follows:
 

 “No bonded indebtedness of the state, or any polit
 
 *68
 
 ical subdivisions thereof, shall be incurred or renewed, unless, in the legislation under which such indebtedness is incurred or renewed, provision is made for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds, and to provide a sinking fund for their final redemption at maturity.”
 

 The relator herein is the holder in due course of Bond No. 8 in the denomination of $1,000, dated August 1,1930, bearing interest at the rate of four and one-quarter per cent. per annum, payable semi-annually on April 1st and October 1st of each year, due as to principal on October 1, 1935, and of a series of the county’s portion of Lee Road No. 12 improvement bonds, aggregating in principal amount $18,000, and maturing in the years 1931 to 1940, inclusive.
 

 There can be no question but that this bond is a serial bond for the retirement of which there was a constitutional requirement at the time of its issuance that the county should provide by proper legislation for levying and collecting annually by taxation an amount sufficient to pay the interest thereon as the same should accrue and provide a sinking fund for final redemption at maturity. This constitutional requirement was complied with at the proper time. Then the question asserts itself, has the holder of this bond such a vested right as entitles him to demand that the legislation be strictly followed? In other words, is his right of such gravity and sufficiently clear to entitle him to the extraordinary writ of mandamus to require the taxing authorities of Cuyahoga county to keep in step with their original legislation?
 

 Let us not lose sight of the fact that this same constitutional requirement is made to apply to renewals of existing indebtedness by the same constitutional provision.
 

 Pre-existing legislation can in no wise effect a change in a constitutional amendment, but it may
 
 *69
 
 furnish a worth-while side light in determining the scope of such constitutional provision.
 

 We shall not attempt to quote or even refer to all the statutes existing prior to the adoption of the constitutional amendment in question, that gave power to taxing districts to renew and refund existing indebtedness. The words “renew” and “refund” as used in our tax laws are not strictly synonymous. These old statutes relative to municipal corporations were retained in form and substance until amended, effective in 1922, 109 Ohio Laws, 339, wherein the power to refund which could be exercised
 
 when it appeared to the test interests of the corporation so to do
 
 was taken away. It was the part of wisdom to place this limitation on municipalities, as the old grant of power was altogether too liberal.
 

 The legislative grant of power to taxing districts or subdivisions is contained in Section 2293-5, General Code:
 

 “With the approval of the bureau of inspection and supervision of public offices, the taxing authority of any subdivision at any time prior to June 30, 1935, may refund any outstanding bonds of the subdivision which have matured or which are about to mature. The bureau shall approve such issue only when it finds and to the extent it finds that no other method of payment in whole or part exists; * * *. ”
 

 Respondents seem to anticipate that relator would attack the right and power of the Bureau of Inspection and Supervision of Public Offices to approve this proposed renewal, or refunder, as you please, but we fail to find any such attack.
 

 Relator defines his position most succinctly. He states, “The question to be determined by the Court does not depend upon the power of the County to issue refunding bonds, nor upon the meaning nor constitutionality of Section 2293-5, General Code. The question involves Section 5625-23, General Code, and Sec
 
 *70
 
 tion 11 of Article XII of the Constitution. The specific question involved is whether these provisions of the Uniform Tax Levy Law and of the Constitution can be ignored by the Budget Commission.”
 

 We quote Section 5625-23, General Code, in full:
 

 “The county auditor shall lay before the budget commission the annual tax budgets submitted to him under the provisions of this act, together with an estimate to be prepared by such auditor, of the amount of any state levy, the rate of any school tax levy as theretofore determined, and such other information as the budget commission may request or the state tax commission may prescribe. The budget commission shall examine such budget and ascertain the total amount proposed to be raised in the county for the purposes of each subdivision and other taxing units therein.
 

 “The budget commission shall ascertain that the following levies are properly authorized and if so authorized, shall approve them without modification.
 

 “ (a) All levies outside of the ten mill limitation.
 

 “(b) All levies for debt charges not provided for by levies outside of the ten mill limitation, including levies'necessary to pay notes issued for emergency purposes.
 

 “(c) The levies prescribed by sections 4605 and 4621 of the General Code.
 

 “If any debt charge is omitted from the budget, the budget commission shall include it therein.”
 

 There can be no question that the language of this statute is mandatory, but if these statutes are to be construed as contended by relator, are we not running into a statutory conflict?
 

 Can Section 2293-5, General Code, and Section 5625-23, General Code, be reconciled with each other and with Section 11 of Article XII of the Constitution of Ohio? If they can not, we must find wherein the supremacy lies.
 

 Relator raises no question concerning the imminence
 
 *71
 
 of the maturity of the bond in question. He contents himself with the assertion that such question is not in the case.
 

 If Section 5625-23, General Code, is absolute, relator is right in his contention. If Section 2293-5, General Code, has any virtue at all, then relator is wrong, as he has not shown a clear legal right to his writ.
 

 Section 2293-5, General Code, became effective in its present form September 5, 1933, and Section 5625-23, General Code, became effective June 29,1934. If these statutes were clearly repugnant, then Section 5625-23, General Code, being the last expression of the General Assembly, would have the right of way. Are they repugnant ?
 

 It is the duty of this court to reconcile these statutes, if possible.
 

 Statutes
 
 in pari materia
 
 are to be construed together as having one object and one system and policy. This has been the law since 1840 and has at no time been departed from.
 
 Dodge
 
 v.
 
 Gridley,
 
 10 Ohio, 173.
 

 The sections of the Code involved herein deal with the general subject of taxation. Section 2293-5, General Code, deals with the refunding of bonds specifically. Section 5625-23, General Code, provides for the preparation of the annual budget, the approval of levies and the exercise of a sort of supervisory power over debt charges. This supervisory power is contained in the last sentence of Section 5625-23, General Code, namely:
 

 “If any debt charge is omitted from the budget, the budget commission shall include it therein,” and this is the peg upon which relator hangs his hat.
 

 If relator’s contention along this line is sound, then the bonds in question cannot be refunded, Section 11 of Article XII of the Constitution of Ohio and Section 2293-5, General Code, to the contrary notwithstanding.
 

 Counsel cite
 
 Rabe
 
 v.
 
 Board of Edn. of Canton School Dist.,
 
 88 Ohio St., 403, 104 N. E., 537, in support of
 
 *72
 
 their contention that Section 11, Article XII of the Constitution, is mandatory in requiring the levy of an annual tax to take care of debt charges and that such tax was a preferred tax over the tax for operating expenses of the subdivision. The right of a subdivision to refund its bonded indebtedness was not involved. The question in that case was the proposed issuance of bonds in excess of anticipated income, necessitating a rate in excess of the constitutional limitation. The dictum of Judge Donahue, at pages 422 and 423, does support relator’s contention herein.
 

 The ease of
 
 Link
 
 v.
 
 Karb, Mayor,
 
 89 Ohio St., 326, 104 N. E., 632, likewise supports relator’s contention to the effect that the provisions of Section 11, Article XII of the Constitution, are mandatory during the life of bonds issued thereunder.
 

 The
 
 Link case
 
 is most peculiar. The first paragraph of the syllabus holds that Section 11, Article XII, has no application to a city ordinance, providing for a bond issue, passed June 17,1912, inasmuch as the Constitutional amendment did not become effective until J anuary 1,1913.
 

 The real question in that case was the contest of an election authorizing a bond issue in a collateral proceeding. Notwithstanding the first paragraph of the syllabus and the question involved, the court in the second and third paragraphs of the syllabus elaborates upon the provisions of Section 11 of Article XII of the Constitution and announces law that upholds the relator in the case before us. But no question of renewal or refunder was involved in the case.
 

 The next case in line is that of
 
 State, ex rel. Heald,
 
 v.
 
 Zangerle et al., Budget Commrs.,
 
 94 Ohio St., 447, 113 N. E., 1013, and in that case Heald filed an original action in mandamus in this court praying that the Budget Commissioners of Cuyahoga county be compelled to certify an amount in preference to all other items of tax, as the amount required for interest and
 
 *73
 
 sinking fund purposes to take care of all bonds of the city of Cleveland issued and outstanding. The court held that such amount held preference and that it was the duty of the Budget Commissioners to certify same to the county auditor for such purposes, regardless of other needs of the taxing district. The
 
 Rabe case, supra,
 
 was approved and followed.
 

 No question of renewal or refunding of bonds was raised in that case.
 

 The case of
 
 State, ex rel. The Merydith Construction Co.,
 
 v.
 
 Dean, And.,
 
 95 Ohio St., 108, 116 N. E., 37, was an original action in mandamus to compel Dean as City Auditor of Ironton to sign a series of bonds that had been issued for a filtration plant. There is nothing in the syllabus that bears on the instant case, but we are cited to page 119 of the opinion. The dictum bearing on this case can be boiled down to the one sentence:
 

 “Everything of a municipal nature, all current expenses of every kind, must yield to the imperative necessity of paying interest and providing a sinking fund.”
 

 That case helps none on the question of the right of a taxing subdivision to refund bonds.
 

 The next case is that of
 
 State, ex rel. Southard, Dir. of Health,
 
 v.
 
 City of Van Wert,
 
 126 Ohio St., 78, 184 N. E., 12. This was an original action in mandamus brought by the state director of public health to compel the city of Van Wert to comply with an order of the state health department to install works and means satisfactory to the director of health for disposing of the sewage of the city of YanWert in such a way as not to pollute Town Creek. Four defenses were interposed, to the effect that the city did not have the money and could not get it, that an election had been held whereby it was sought to obtain authorization to issue bonds for such purpose, but that such proposal did not carry. This court, after citing the cases herein referred to, said in effect, “get the money.”
 

 
 *74
 
 No question of renewal or refunding was involved in that case.
 

 The last case is that of
 
 State, ex rel. Bruml,
 
 v.
 
 Village of Brooklyn,
 
 126 Ohio St., 459, 185 N. E., 841. Relator in this case was an owner of bonds of Brooklyn Village, issued in anticipation of the collection of special assessments made for street improvements. It was averred that no levy was made in 1933 to take care of interest and retirement. Relator prayed for a writ of mandamus to compel a general tax levy for principal and interest in default and for the amount to become due in 1933" to the exclusion of operating expenses, if necessary.
 

 The village answered to the effect that the special assessments had not been paid and it was without funds available to pay bonds and interest. A demurrer was sustained to this answer, and writ allowed.
 

 Practically all the cases referred to herein were cited and followed in that case — but renewal or refunder was not mentioned.
 

 Relator with consistent sagacity adheres in thought, if not in language, to the word “incurred” as used in Section 11 of Article XII of the Constitution, but remains studiously away from the term “renewed,” as expressed therein. We may argue away from and around it, but, like Banquo’s ghost, “It will not down” —it is there.
 

 If our Constitution makers did not intend that the state, and its political subdivisions could renew their obligations and refund their indebtedness, why use the term at all? The Constitution is surely as much a part of the law of Ohio as its statutes, and purchasers of bonds are charged with knowledge of its provisions. They are bound to know that the word “renewed” as well as the word “incurred” is used in this section in relation to the indebtedness of the state and its political subdivisions. They run alóng hand in hand, and neither is dignified above the other. On the contrary,
 
 *75
 
 the legislative requirements are the same. If the state and its political subdivisions cannot renew indebtedness, they cannot incur it, as the power to do both comes from the same constitutional grant.
 

 The state and its political subdivisions under the law can have but three forms of negotiable indebtedness, namely, bonds, certificates of indebtedness and notes. A certificate of indebtedness is an emergency obligation, issued only for limited purposes, and from its very nature is not renewable. Notes may he issued, but not for a longer period than six months. They are issued in anticipation of the taxes collected and distributed at the next semi-annual settlement thereafter, and the money realized therefrom can only he used for the purposes for which the tax when collected could be used. As certificates of indebtedness and notes are not renewable, then the only form of indebtedness that can be renewed is bonded indebtedness, and the Constitution so states.
 

 We grant that the last sentence of Section 5625-23, General Code, “If any debt charge is omitted from the budget, the budget commission shall include it therein” is specific and mandatory. But the law does not require administrative hoards to do vain things.
 

 The budget commission consists of the auditor, treasurer and prosecuting attorney of the county, and it surely knows when the county is going to refund bonded indebtedness and, everything else being equal, it would be nonsense to include in the budget a charge for a debt that was to be refunded during that year.
 

 Relator probably has some trepidation lest the refunding bonds cannot he sold. We fail to see wherein relator would he seriously hurt in such event. He would still have his bond, to the payment of which the full faith, credit and property of the county is pledged. The state and its subdivisions cannot run willy nilly in the refunding process. The Bureau of Inspection and Supervision of Public Offices has com
 
 *76
 
 píete supervision over such process. On February 25, 1935, this bureau approved the proposition to refund the bonds of Cuyahoga county maturing April 1, 1935, but withheld its approval as to bonds maturing October 1,1935, because of doubt as to the legal applicability of the words “about to mature,” as used in Section 2293-5, General Code.
 

 Ohio’s fiscal year is the same as its calendar year. Both begin January 1st and end December 31st of each year. Section 260-1, General Code.
 

 Surely any bond that is to mature during any particular fiscal year is “about to mature” at any time after January 1st of that year. In view of the fact that we have a fiscal year provided by statute and provided for the purpose of taking care of, adjusting, and, in so far as is possible, conserving the finances of the state and its subdivisions, any other holding, it would seem, would be farcical.
 

 Just how far must county commissioners go when they seek to refund bonded indebtedness?
 

 The state has said in effect, “You can refund such indebtedness prior to June 30, 1935, if your proposition is approved by the Bureau of Inspection and Supervision of Public Offices.” The bureau is restricted, of course, to the extent that it shall approve such issue only when it finds and to the extent that it finds that no other method in whole or in part exists. After this approval has been secured, it is not for the budget commissioners to question the righteousness, wisdom or legality of this approval, as the bureau is a state institution — and the county commissioners have the right to proceed upon such approval.
 

 We are in perfect accord with the law as announced in the
 
 Rabe case, supra,
 
 which case has been followed consistently by this court, to the extent that Section 11, Article XII of the Constitution of Ohio, is mandatory in requiring the levy of an annual tax to take care of debt charges and that such tax is preferred
 
 *77
 
 over a tax for operating expenses, that such preference is eternal and everlasting under any and all circumstances, except when the taxing authority of the state or its subdivisions undertakes to refund existing indebtedness, in which event no levy need be made to take care of the bonds already matured or about to mature that are to be refunded.
 

 Relator fails to present a clear right to a writ of mandamus herein and the same is denied.
 

 Writ denied.
 

 Weygandt, C. J., Williams, Matthias, Day and Zimmerman, JJ., concur.
 

 Jones, J., not participating.