Myers, J.
 

 The question for determination in this ease is whether the respondent, the village of Solon, may avoid payment of certain special assessment improvement bonds' from its general revenue fund on the ground that the village was without power under the Constitution and laws of Ohio to pledge its faith, credit and revenue for the payment thereof. It is asserted that the bonds were issued in violation of the provisions of Sections 2 and 11 of Article XII of the Constitution of Ohio, and also in violation of Sections 5625-2, 5625-23, 5625-24 and 7575, General Code, as such sections were in effect at the time of the issuance and sale of the bonds.
 

 An examination of the pleadings and the agreed statement of facts fails to reveal any serious contention that the village of Solon is in any different financial condition than many other municipalities. It appears that thé proceedings had by council and officials of the village were regular in form and followed the provisions of the statute governing same. It is not claimed that the village has made any substantial efforts to provide the funds by appropriate levies for the payment of the interest and principal of the bonds. We, therefore, have a situation where respondent, the village of Solon, admits the passage of ordinances in 1929,1930 and 1931, first for the issuance of notes, and later for the issuance and sale of bonds, and that the proceeds of the bonds were received and used by the village for improvements, as provided for in the ordinances.
 

 The village now claims, however, that by reason of tax limitations then in force its bonds are not general
 
 *366
 
 obligation bonds of the village of Solon. We come, therefore, to the claim of the respondent that although council had authority to levy and pledge the special assessments, it did not have authority to pledge the general taxes. In its brief respondent village admits that regardless of the question of legality or illegality of the bonds as
 
 general obligations,
 
 they undoubtedly constitute effective pledges of the special assessments. Under somewhat similar facts in the case of
 
 State, ex rel. Stauss,
 
 v.
 
 County of Cuyahoga,
 
 130 Ohio St., 64, 196 N. E., 890, this court held that:
 

 “The levy of an annual tax to take care of debt charges is preferred over all other levies, even over a levy for operating expenses, at all times and under all circumstances, except when the state or a subdivision thereof undertakes to refund some part of its bonded indebtedness, in which.event no levy need be made to take care of the bonds already matured, or about to mature, that are to be refunded. ’ ’
 

 The respondent village, having abandoned its former claim that it was refunding the bonds, the decision in the
 
 Stauss case, supra,
 
 is dispositive of the present case. To the same effect is
 
 State, ex rel. Southard,
 
 v.
 
 City of Van Wert,
 
 126 Ohio St., 78, 84, 184 N. E., 12, in which it was said: ‘ ‘ Current expenses must be secondary to levies to meet mandatory requirements, such as discharge of bonded indebtedness.”
 

 But 'counsel for the village here contend that by virtue of statutory and constitutional tax limitations in effect at the time these bonds were issued in August, 1931, the only funds that can be available for interest and retirement purposes must come from the collection of special assessments. That question was decided by this court in the case of
 
 State, ex rel. Bruml,
 
 v.
 
 Village of Brooklyn,
 
 126 Ohio St., 459, 185 N. E., 841. This court there held that:
 

 “Where a municipality has issued bonds in anticipation of special assessments for public improvements,
 
 *367
 
 which bonds pledged the faith, credit, and revenue of such municipality for the prompt payment of the principal and interest thereof at maturity, and an insufficient amount is available from the collection of the special assessments levied for the purpose of paying at maturity the interest and principal of such bonds, a writ of mandamus will lie upon the petition of a holder in due course of such bonds, to compel the municipal authorities, upon refusal or failure so to do, to take steps, within constitutional and statutory limitations, ‘for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds, and to provide a sinking fund for their final redemption at maturity,’ as provided in Section 11 of Article XII of the Constitution of Ohio.”
 

 The court, in its opinion at page 463, also said:
 

 “Bonds of political subdivisions of Ohio are general obligations, and under the law funds must be provided by the issuing subdivision for the payment of interest and principal at maturity. Bonds issued in anticipation of the collection of such assessments are not an exception to this rule, although the issuing subdivision may reduce the amount to be levied in any year by the amount available from special assessments, as provided in Section 2293-26, General 'Code * *
 

 In the instant case the village makes the further claim that these bonds should not be regarded as general obligations for the reason that the millage then authorized by law and the Constitution would not, in connection with other bond requirements theretofore obligated,' and the 4.85 mills required at the time of issuance of the bonds for educational purposes, leave or provide enough funds to retire interest and principal on the bonds herein involved. It is especially urged that this could not be done for the reason that the pledged requirements would encroach upon the operating revenue of the overlapping subdivisions of
 
 *368
 
 the county of Cuyahoga and the Solon Village School District.
 

 Assuming for the purpose of this discussion that a reasonable survey of the tax duplicate, prior outstanding bonded indebtedness, millage requirements for education and other debt charges would have disclosed a rate which would have precluded the issuance of the bonds under tax limitations then in force, is the respondent village in a position to advance those defenses now^' Counsel for respondent intimate in their brief that any property owner could have made a successful appeal to the court to enjoin the sale of the bonds, and could have thereby prevented the accrual of the obligation of the tax pledge. Granting that a taxpayer could have enjoined the sale of the bonds at that time, he nevertheless could not do it now for the reason that Section 2293-37, General Code, provides -that such bonds “shall be incontestable unless such action or proceeding is begun prior to the delivery of such bonds.” If, therefore, such action is closed to the taxpayer after the delivery of the bonds, how much more so is the respondent village precluded from defending on the same grounds after it received the proceeds and used the same for improvements duly authorized by law. If a taxpayer, who has made no certification or guarantee of validity of the bonds, and for whose express benefit tax limitations are enacted, cannot now by legal action enjoin the enforcement of the obligations, how much less can the village, whose duly elected officials executed the bonds which contained the following certification:
 

 “And it is hereby certified and recited, that all acts, conditions and things necessary to be done precedent to and in the issuing of these bonds, ’in order to make them legal, valid and binding obligations of said village, have been done, happened and performed in regular and due form as required by law; that the faith, credit and revenue of said village are hereby
 
 *369
 
 irrevocably pledged for the prompt payment of the principal and interest thereof at maturity; that no limitation of indebtedness or taxation, either statutory or constitutional, has been exceeded in issuing these bonds; and that due provision has been made for levying and collecting annually by taxation an amount sufficient to pay the interest on these bonds as it falls due, and to provide a fund for the redemption of said bonds at maturity.”
 

 The general rule in regard to estoppel of a munici.pal corporation in respect to bonds in the hands of a
 
 bona fide
 
 holder in due course is well stated in the case of
 
 Independent School Dist. of Sioux City, Iowa,
 
 v.
 
 Rew,
 
 111 F., 1, as follows:
 

 “When a municipal body has lawful authority to issue bonds on the condition that certain facts exist or certain acts have been done, and the law intrusts the power to, and imposes the duty upon, its officers to ascertain, determine, and certify the existence of these facts at the time of' issuing the bonds, their certificate will estop the municipality, as against a
 
 bona fide
 
 holder of the bonds, from proving its falsity to defeat them.”
 

 To the same effect is the case of
 
 City of Huron
 
 v.
 
 Second Ward Savings Bank,
 
 86 F., 272, as follows:
 

 “Where an innocent purchaser buys, of others than the municipality or its agents, negotiable bonds which recite that they were issued to fund the debt or obligations of the municipality, the purchaser may rest on the legal presumption that the legal method was adopted that the issue of the bonds did not increase the debt of the municipality, and he is not required to consider or inquire concerning the question of excessive indebtedness.”
 

 Also see
 
 Wm. N. Coler & Co.
 
 v.
 
 Dwight School Township,
 
 2 N. D., 249, 55 N. W., 587;
 
 Town of New Haven
 
 v.
 
 Weston,
 
 78 Vt., 7, 86 A., 996, 46 L. R. A. (N. S.), 921.
 

 
 *370
 
 It should he remembered that the indebtedness in the instant ease was incurred prior to January 1,1931, the effective date of the first tax limitation in the Constitution of Ohio. The first ordinances, providing for the original notes, were passed in 1929. The bonds thereafter issued represented the indebtedness of the notes plus unpaid interest. The funding of notes into bonds is not the creation of any new indebtedness but a continuation of the original.
 
 Commonwealth, ex rel. Keller,
 
 v.
 
 Cannon,
 
 308 Pa., 321, 162 A.,
 
 277; State, ex rel. Industrial Commission,
 
 v.
 
 Steel, Mayor,
 
 130 Ohio St., 90, 196 N. E., 782. The adoption of the fifteen-mill tax limitation, and later the ten-mill tax limitation, could in no wise affect the validity of the bonds for the reason that the obligation of an existing contract may not be impaired, even by a constitutional amendment.
 

 While tax limitations are primarily designed for the protection of the taxpayer, the property owner also has an obligation to know what is going on in his municipality. If the village of Solon was in the financial condition set forth by learned counsel in their brief, at the time the bonds were issued, it would seem that a considerable portion of the electorate should have known something about it. That is especially true in this case, where the legislation, in the form of various ordinances for the notes and bonds, covered a period of approximately two years from 1929 to 1931. No one in the village during all of that time, having deemed it advisable to enjoin the proceedings, and the proceeds of the bonds having been expended for public improvements, Section 2293-37, General Code, is applicable and the municipality is not now in a position to say that what it did then was contrary to law. As heretofore held by this court
 
 (State, ex rel. Bruml,
 
 v.
 
 Village of Brooklyn, supra)
 
 the special assessments not being sufficient to pay interest and principal of the bonds at maturity, a writ of mandamus will issue to compel the municipal authorities of the village of
 
 *371
 
 Solon to make due provision for levying and collecting annually by taxation an amount sufficient to pay interest and principal on tbe bonds at maturity.
 

 Writ allowed.
 

 Weygandt, C. J., Jones, Matthias, Day, Zimmerman and Williams, JJ., concur.