Day, J.
 

 The question is whether relator is entitled to a writ of mandamus, compelling respondents, among other things, to levy such taxes' as shall be sufficient to produce the full amount required to pay the inter
 
 *156
 
 est and principal on the bonds held by it and others similarly situated, as they fall due, without reference to any tax limitation whatever. Respondents’- first contention is that the notes which were exchanged for the bonds were issued under the provisions of Section 2293-24, General Code, and not under those of Section 2293-25, General Code,- that under the first-mentioned section, notes may be issued in anticipation'of the levy of special assessments or in anticipation of the issuance of bonds,- that the proceeds of the bonds thereafter issued in anticipation of the collection of assessments, and of all assessments collected, must be applied to. the payment of the notes' and interest- thereon; that there is no requirement, however, for the making of any provision for the levy and collection of a general property tax for the specific purpose of paying such notes or interest thereon; that when notes are issued under Section 2293-25, G-eneral Code, in anticipation of the issuance of bonds, the village is required and can be compelled to make provision “for the levy of a tax during the year or years while such notes run”; and that since the notes were issued under Section 2293-24, General Code, and not under 2293-25, General Code, the relator has no legal right to have a tax levied for the specific purpose of paying such notes.
 

 Section 2293-24, General Code, provides: “Subdivisions shall have power to issue bonds in anticipation of the collection of special assessments. Such bonds may be in sufficient amount to pay that portion of the estimated cost of the improvement or service for which the assessments are levied, and -the assessments as paid shall be applied to the liquidation of such bonds. Subdivisions may borrow money and issue notes, due and payable not later than two years from the date of issue, in anticipation of the levy of special assessments or of the issuance of bonds as provided in this section. The notes shall not exceed in amount that
 
 *157
 
 portion of the estimated cost of the improvement or service for which the assessment is levied. When such notes-are issued, the proceeds of bonds thereafter issued in anticipation of the collection of assessments and all of the assessments collected for the improvement shall be applied to the payment of the notes and interest thereon until both are fully paid; and thereafter said assessments shall be applied to the payment of said bonds and interest thereon. Bonds or notes issued under this section may be combined in a single issue with other assessment bonds or notes, and with bonds or notes to pay the subdivision’s share of the cost of the permanent improvements for which such assessment bonds are issued. Bonds or notes issued in anticipation of the levy of special assessments' or the collection thereof shall be full general obligations of the issuing subdivision, and for the payment of the principal and interest of same the full faith, credit and revenues of such subdivision shall be pledged.”
 

 Section 2293-25, General Code, provides': “Whenever the taxing authority of a subdivision has legal authority to, and desires to issue bonds without vote of the people, it shall pass a resolution or ordinance declaring the necessity of such bond issue, its purpose and amount. In such resolution or ordinance the taxing authority shall determine, and in any case where an issue of bonds has been approved by a vote of the people, the taxing authority shall by ordinance or resolution determine, whether notes shall be issued in anticipation of the issue of bonds, and-, if so, the amount of such anticipatory notes, not to exceed the amount of the bond issue, the rate of interest, the date of such notes, and their maturity, not to exceed two years. Except in the case of notes issued in anticipation -of special assessment bonds, such notes shall be redeemable at any interest period and a resolution or ordinance providing for the issue of notes in anticipa
 
 *158
 
 tion of the issue of bonds shall provide for the levy of a tax during the year or years while such notes run, not less than that which would have been levied if bonds had been issued without the prior issue of such notes. A copy of such resolution or ordinance shall be certified by the fiscal officer of the subdivision to the county auditor of the county in which such subdivision is located.”
 

 At the outset, it must be noted that Section 2293-24, General Code, stands related to the subsequent sections, is
 
 in pari materia
 
 therewith, and they must be read and construed together.
 

 Section 2293-24, General Code, grants power. It authorizes.the issuance of notes in anticipation of the
 
 levy
 
 of special assessments, or the issuance of bonds in anticipation of the
 
 collection
 
 of special assessments. It applies only to the special assessment anticipatory notes and bonds — the notes anticipatory to levy and the bonds anticipatory to collection. The statute provides that such notes or bonds shall be the full, general obligation of the issuing subdivision for the payment of which the full faith, credit and revenue of such subdivision shall be pledged.
 

 The provisions of Section 2293-25, General Code, are procedural. They require that provision be made for the levy of a tax during the year or years which such notes run.
 

 The village first adopted a resolution of necessity, determining that the improvements were conducive to public health; convenience and welfare and determined the details thereof. The village next determined to issue notes' in anticipation of the issue of bonds. It later determined to issue bonds in anticipation of the collection of special assessments and provided for a levy of taxes if “bonds are not issued to provide a fund for such note or notes at maturity” or “in the
 
 *159
 
 event that assessments are not levied for said improvements.”
 

 In our opinion, there is a sufficient compliance with the statutory requirement that the resolution “shall provide for the levy of a tax during the year or years while such notes run.” It therefore became the mandatory duty of the village, under the statute, to levy a tax.
 

 Where'the assessments anticipated by bonds are insufficient to pay the same, mandamus will lie to compel the political subdivision to levy a sufficient tax.
 
 State, ex rel. Bruml,
 
 v.
 
 Village of Brooklyn,
 
 126 Ohio St., 459, 185 N. E., 841.
 

 At the time that the notes were issued, Section 5625-2, General Code (112 Ohio Laws, 392), was in effect, reading as follows: “The aggregate amount of taxes that may be levied on any taxable property in any subdivision or other taxing unit of the state shall not in any one year exceed fifteen mills on each dollar of tax valuation of such subdivision or other taxing unit, except taxes specifically authorized to be levied in excess thereof. The limitation provided by this section shall be known as the ‘fifteen-mill limitation.’ ”
 

 Respondents contend that this statute imposed a fifteen-mill tax limitation and, by implication, likewise imposed a fifteen-mill debt limitation. However, the question, under the facts in the case, is not whether, on issuing the funding bonds, the statutory debt limitation was exceeded, but rather, assuming that it was exceeded, can the municipality at this late hour, after the money raised thereby has been expended on public improvements, be heard to deny its' authority to incur the obligation? The notes and the bonds, on their face, contained a recital that no limitation of indebtedness or taxation, either statutory or constitutional, had been exceeded. The municipality is estopped to deny the truth of this recital against a
 
 bona fide
 
 purchaser
 
 *160
 
 for value without any notice or knowledge of facts to the contrary.
 

 Respondents next contend that the bonds in suit are not refunding bonds; that they are new and independent obligations' and not merely the continuance of the debts evidenced by the various notes. Respondents point to the fact that the amount of the bonds authorized to be issued exceeded the amount of the notes, and that the rate of interest on the bonds was six per cent, whereas the rate of interest on some of the notes was only five per cent.
 

 Increase in the rate of interest of funding bonds over that borne by the notes funded does not constitute the creation of a new debt. The right to fund or refund an existing obligation includes the right to fix such rate of interest within the limits prescribed by law (six per cent — Section 2293-8, General Code) as would make the funding or refunding possible. "We are aware of no provision, statutory or constitutional, which imposes the requirement that the rate of interest of funding or refunding bonds shall be the same as that borne by the debt funded or refunded.
 

 “The fact that the bonds when issued, bore rates of interest less than six per cent, does not determine the rate at which the refunding bonds may be issued. The rate of interest which bonds issued by a municipal corporation shall bear is' fixed by the governing body of the corporation, in its discretion, within the statutory limitation.”
 
 Bolich
 
 v.
 
 City of Winston-Salem
 
 (1932), 202 N. C., 876, 164 S. E., 361.
 

 Nor does the fact that the amount of the funding bonds authorized to be issued exceeded the principal amount of the notes render the bond obligation new and independent. True, refunding bonds must be used exclusively for purposes of refunding. However, there is no evidence that any of the bonds were here used for any other purpose or that any of the bonds
 
 *161
 
 have been disposed of in any other manner. On the contrary, the record is clear that the amount of the bonds actually issued was only the amount of the debt due at that time.
 

 Section 2293-8, General Code, provides that “bonds or notes issued by any subdivision shall specify on their face the purpose for which they are issued and the resolution or ordinance under which they are issued. ’ ’
 

 Respondents raise the objection that the bonds were not designated or advertised as refunding bonds. To this we attach little importance. If the recital in the bonds indicates that the purpose is public, there is sufficient compliance with the statute. Failure to label the bonds or to name them in the advertisement as “refunding” or “funding” is not material if the recital otherwise discloses the purpose of their issuance to be public. The bonds show on their face that they were issued for public improvements.' This sufficiently states the purpose within the meaning of the provisions of Section 2293-8,, General Code.
 

 • Does the fifteen-mill or ten-mill constitutional tax limitation here apply?
 

 Authorization for the issuance of the notes was given by the council of the village of Hudson in 1930, and all were issued and sold during that year. The specific notes held by relator were purchased by it on November 1, 1930, and were delivered to it on November 8, 1930.
 

 The amendment to Section 2, Article XII, of the Ohio Constitution, imposing a fifteen-mill tax limitation, was adopted on November 5, 1929, but did not go into effect until January 1, 1931.
 

 The amendment to Section 2, Article XII, of the Ohio Constitution, changing the tax limitation from fifteen mills to ten mills, was adopted on November 7, 1933, and did not go into effect until January 1, 1934.
 

 
 *162
 

 The inhibitions of Section 2, Article XII, are directed against new and not against pre-existing debts.
 
 The note obligations were incurred prior to the adoption of either constitutional limitation and are not therefore subject thereto.' Such obligations may be extended and continued without reference to such limitation.
 

 In
 
 State, ex rel. Alden Corp.,
 
 v.
 
 Village of Solon,
 
 132 Ohio St., 362, 7 N. E. (2d), 550, the court held that the adoption of the fifteen-mill tax limitation and later the ten-mill tax limitation could in no wise affect the validity of the bonds for the reason that the obligations of an existing contract may not be impaired even by constitutional amendment.
 

 The village of Hudson issued bonds and exchanged them for the notes, thereby continuing the debt. The existing debt was not thereby extinguished and a new debt was not thereby created. Merely, the form of the debt was' changed. “The funding of notes into bonds is not the creation of any new indebtedness but a continuation of the original.”
 
 State, ex rel. Alden Corp.,
 
 v.
 
 Village of Solon, supra.
 
 To the same effect, see 6 McQuillin on Municipal Corporations (2 Ed.), 46, Section 2385; 1 Quindry, Bonds and Bond Holders, 723, Section 512.
 

 Municipal funding bonds, exchanged for an original indebtedness created prior to the adoption of a constitutional tax limitation, are not subject to such limitation even though the tax levy for the payment of the principal and interest of such bonds exceeds such new limitation.
 

 Writ allowed.
 

 Weygandt, C. J., Matthias, Zimmerman, Wilmams, Myers and Gorman, JJ., concur.