The State, ex rel. City of Akron, *v.* Slusser, Mayor, et al.

(No. 3661—Decided April 27, 1944.)

*Mr. Clair M. Trunick,* for plaintiff.
*Mr. Clyde F. Beery, Mr. W. E. Pardee* and *Mr. W. J. Laub,* for intervening petitioner.

142

*Mr. Roy E. Browne,* director of law, *Mr. Nathan Koplin, Mr. Alva J. Russell,* prosecuting attorney, and *Mr. W. E. Spencer,* for defendants.

STEVENS, P. J. This action in mandamus, filed originally in this court, upon demand of a taxpayer of the city of Akron, seeks the issuance of a writ of mandamus requiring the defendants "to amend and revise the budget" of the city of Akron, "and to make a levy for the purposes set forth in said budget other than for the payment of bonds, interest and taxes duly authorized by vote of the electors of said city * * *, within the limitation" (charter) "of seven and five-tenths (7.5) mills," and for other relief.

An intervening petition has also been filed by leave of court, wherein the same relief sought in the original petition is requested.

The answer of the defendants, after admitting many of the allegations of the petition and the intervening petition, alleges that the budget had been prepared and adopted in conformity to existing legal requirements, "and that the relator nor anyone else protested said annual appropriation measure there and then made, and that the relator or others similarly situated are estopped from now protesting said budget or appropriation measure."

The answer then sets out in detail the rates, amounts and uses of the levy as modified by the city council, showing what part was inside and what part outside the charter limitation of 7.5 mills, and then alleges that "the action taken by the budget commission herein, following the action taken by the city council of Akron in modifying and adopting the same, was pursuant to law and authority by placing outside the seven-and-one-half-mill limitation an amount equal to approximately 3.15 mills for the reason that the same

represented a pre-existing debt within the meaning of the Constitution and the laws of the state of Ohio, said debt having been incurred lawfully and legally subsequent to December 31, 1920, and prior to 1934.''

The answer then continues:

''Further answering, these respondents say that the amendment to the Akron city charter hereinbefore referred to and set out as Sections 86a, 86b and 86c, was enacted and became effective on November 6, 1928, and that for the year 1929 when the said seven-and-one-half-mill levy first became available to the taxing authorities, there was available as a tax base taxable property in the city of Akron the sum of $422,099,188, and that for the year 1930 there was available in a like manner the sum of $432,042,580.

''By reason of the laws passed subsequent to January 1, 1931, when Article XII, Section 2, became effective, the personal property list of the city of Akron was decreased, and the taxable property on the general tax list of the city of Akron does not now provide a base which is equivalent to the base in existence prior to the effective date of the said constitutional amendment and the schedule thereto attached. The city of Akron is therefore entitled to levy outside of said seven-and-one-half-mill limitation the amount required to equalize any reduction in the amount of taxable property available for such levies or the rate imposed upon such property effected by such laws. The said schedule to the constitutional provision hereinbefore referred to reads as follows:

'' 'If the votes for the proposal shall exceed those against it, the amendment shall go into effect January 1, 1931, and original Sections 2 and 3 of Article XII of the Constitution of the state of Ohio shall be repealed and annulled; but all levies for interest and sinking fund or retirement of bonds issued, or auth-

orized prior to said date which are not subject to the statutory limitation of fifteen mills on the aggregate rate of taxation then in force, and all tax levies provided for by the conservancy act of Ohio and the sanitary district act of Ohio, as said laws are in force on said date, for the purposes of conservancy districts and sanitary districts organized prior to said date, and all tax levies for other purposes authorized by the General Assembly prior to said date or by vote of the electors of any political subdivision of the state, pursuant to laws in force on said date, to be made outside said statutory limitation for and during a period of years extending beyond said date, or provided for by the charter of a municipal corporation pursuant to laws in force on said date, shall not be subject to the limitation of fifteen mills established by said amendment; *and levies for interest and sinking fund or retirement of bonds issued or authorized prior to said date, shall be outside of said limitation to the extent required to equalize any reduction in the amount of taxable property available for such levies, or in the rate imposed upon such property, effected by laws thereafter passed'* (italics supplied), with the result that there was available for taxation purposes in 1931 for 1932 collections $332,163,776, said reduction being put into effect by authorities other than the city of Akron taxing authority, first, by the removal from the taxable property available for levying taxes, $95,407,760 of personal property pursuant to state law and replacing said personal property tax base loss by including $46,-619,456 of intangible property as provided for by state law. The remaining reduction was effected by the action of the county auditor in reducing such valuation on the taxable duplicate of the city of Akron real estate by an amount equal to approximately $54,500,000; that by reason of the foregoing action taken by the

state of Ohio pursuant to law in removing the personal property, these respondents have the duty and obligation pursuant to law to levy an amount necessary to equalize the loss of personal property; said respondents did equalize, but not to the full extent as provided by law, which would have allowed an additional levy of 1.33 mills, but did in fact levy only to the extent needed to meet outstanding obligations lawfully incurred between the years 1929 and 1931, inclusive.''

The cause was submitted to the court upon an agreed statement of facts. From the agreed statement of facts it appears that:

1. Municipal bonds in the amount of $673,000 were issued by the city of Akron prior to the enactment of Sections 86a, 86b and 86c of the Charter of the city of Akron, on November 6, 1928, upon which bonds $202,-619 of interest has accrued, making a total liability thereon of $875,619 for principal and interest.

2. Municipal bonds in the amount of $55,000 were issued by the city of Akron between November 6, 1928, and January 1, 1931, upon which bonds interest of $21,994 has accrued, making a total liability thereon of $76,994 for principal and interest. In addition thereto, bonds in the amount of $7,000 were issued October 1, 1931, upon which interest in the sum of $1,330 has accrued, making a total of $8,330 owing on bonds issued after January 1, 1931.

3. All of the above bonds were limited tax bonds, and were issued by action of council and without a vote of the people of said city.

4. Prior to November 6, 1928, there was no charter limitation upon the amount of bonds which might be issued by the city of Akron.

5. On November 6, 1928, Sections 86a, 86b and 86c, of the Charter of the city of Akron became effective by vote of the people. Those sections are as follows:

"Section 86a. The aggregate amount of taxes that may be levied by the taxing authority of the city on any taxable property in the city of Akron without a vote of the people shall not in any one year exceed seven and five-tenths (7.5) mills on each dollar of tax valuation of said city. Of said total maximum levy, an amount shall annually be levied sufficient to pay the interest, sinking fund and retirement charges on all bonds and notes of the city of Akron heretofore or hereafter authorized to be issued without the authority of the electors, which levy shall be placed before and in preference to all other levies and for the full amount thereof. The remaining portion of said maximum levy, or such part thereof as may be necessary, may be levied annually for the current operating expenses of said city. Of said current operating expenses, fifty-five one-hundredths (.55) of a mill may be levied only for the purpose of the University of Akron, and at the request of the board of directors of said university, all, or the part requested of said rate, shall be levied. Amounts certified under the laws of the state as necessary for interest, sinking fund and retirement purposes, shall not be subject to change by council.

"Section 86b. The council shall annually levy outside the limitations provided in this charter and the limitations provided by general law, a sufficient sum to pay the interest, sinking fund and retirement charges on all bonds and notes of the city of Akron heretofore or hereafter lawfully issued, the tax for which by general law or by this charter has been or shall be authorized to be levied outside of tax limitations, including the expense incident to the management of such sinking fund. Amounts certified under the laws of the state as necessary for interest, sinking fund and retirement purposes shall not be subject to change by council.

"Section 86c. Taxes may be levied outside of the limitations of section 86a of this charter upon approval of a majority of electors of the city of Akron voting thereon at a November election in the manner prescribed by general law for voting levies outside the statutory limitations."

6. On July 13, 1943, a budget for the city of Akron was adopted for the year 1944, by the council, designated Resolution No. 259-1943, which budget among other things provided for a levy to pay for the redemption and servicing of the bonds mentioned in items 1 and 2 above, outside of the 7.5 mill charter limitation.

7. There was a decrease in the personal property tax base available to the city of Akron for tax purposes in 1932 of $48,788,304.

The question presented is well stated by counsel for the intervenors, as follows: "Is the levy by the council of approximately 3.15 mills beyond the charter limitation of 7.5 mills on each dollar of tax valuation, for the fiscal year 1944, without the approving vote of the electors, for payment of bonds in the aggregate amount of $961,558, including interest, issued after January 1, 1920, by authority of the council, without obtaining the approval of the electors therefor, a lawful levy?"

In reaching an answer to the question presented, it must be remembered that the expediency of council's action may not be considered by this court, but only the question as to whether or not the council may lawfully do what it is attempting to do.

Let us first consider the defense of estoppel pleaded in the answer of the defendants. It is true, as to the budget, that while Section 86 of the Charter of the city of Akron provides "a public hearing shall be given before final action is taken by the council," neither the charter nor any statute of the state of Ohio pro-

vides that unless a taxpayer protests or objects to the budget he shall be estopped to challenge the tax rate based upon the budget. And in the absence of such legislation there appears to be no lawful basis upon which to sustain the defense of estoppel pleaded by the defendants. Even without objection to the budget, after notice of the public hearing, a taxpayer may challenge the proposed tax rate upon the ground that it is unlawful. The defense of estoppel does not seem to us to be tenable in this situation.

It is asserted by counsel for the defendants, both in brief and in argument, that as to the bonds issued prior to November 6, 1928, that being the date when the seven-and-a-half-mill charter tax limitation became effective, there was in force at the time of their issuance no limitation, either constitutional or charter.

An examination of the history of the several limitations upon taxation by municipalities may be helpful.

The Constitution of Ohio, by Article XIII, Section 6, has vested the General Assembly with power to restrict the authority of municipal corporations on the subject of taxation and financial operations generally, as follows:

"The General Assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power."

The Constitution, in Article XVIII, Section 13, being a part of the "home rule" amendment, contains this provision:

"Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such

form as may be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities.''

In pursuance of this first constitutional grant of authority to the Legislature (Article XIII, Section 6), the Legislature on May 10, 1910, enacted the first 10-mill ''over-all'' limitation law, as Section 5649-2 *et seq.*, General Code. By the provisions of Section 5649-3*a*, General Code, the aggregate of all taxes which might be levied by a municipal corporation on the taxable property in the corporation, for corporation purposes, was limited in any one year to 5 mills. This provision continued in full force and effect until, by the act of April 13, 1927, which act became effective August 11, 1927, it was repealed. On August 11, 1927, there became effective the act passed April 13, 1927, which substituted for the previous act of May 10, 1910, a 15-mill over-all limitation, that section being numbered Section 5625-2, General Code; among other provisions, this act provided that the county budget commission should apportion and adjust the ''over-all'' rate within the 15-mill limitation, among the various taxing units within the county. Effective January 1, 1931, the constitutional amendment of Article XII, Section 2, which provided an over-all limitation of 15 mills, was adopted. That article and section were again amended, effective January 1, 1934, and in this latter amendment the over-all limitation was reduced from 15 to 10 mills. That is the amendment which is still in force.

From the foregoing history on tax limitations, both statutory and constitutional, it appears that bonds issued by the city of Akron prior to November 6, 1928, the effective date of the 7.5-mill charter limitation,

were issued either subject to the 5-mill statutory municipal limitation, or to the 15-mill statutory limitation which became effective August 11, 1927, and that bonds issued after the effective date of said charter limitation, were issued subject to the charter limitation, and to the 15-mill statutory limitation with its apportionment provision, which latter limitation continued in effect until January 1, 1931; and it further appears that bonds issued after January 1, 1931, were subject to the charter limitation and to the constitutional limitation of 15 mills until January 1, 1934, at which time the constitutional limitation was reduced from 15 to 10 mills.

It is conceded by counsel that, of the $961,549 of bonds, including interest, attempted to be paid through levies outside the 7.5-mill charter limitation, $875,619, including interest, were issued between January 1, 1920, and November 6, 1928, the date when the charter limitation became effective, and $85,324, including interest, were issued between November 6, 1928, and January 1, 1934.

It is apparent that, as to such of the bonds as were subject to the 5-mill statutory limitation (the amount of which does not appear), there was no impairment of the contract between the bondholders and the city by the enactment of the 7.5-mill charter limitation, because the charter provision permitted a levy by the city at a higher rate than had been permissible under the 5-mill statutory limitation on the city's right to tax.

As to such of the bonds as were issued between November 6, 1928, and January 1, 1931, the 15-mill statutory limitation with the apportionment feature thereof (Section 5649-10b, General Code, now Section 5625-14, General Code), resulted, according to exhibit E attached to the agreed statement of facts, in a tax rate,

up to 1934, never greater, within the limitation pertaining, than 5.46 mills.

It is therefore likewise apparent that the charter limitation of 7.5 mills, as to the bonds issued between November 6, 1928, and January 1, 1931, accomplished no impairment of the contract existing between the city and the bondholders, because it permitted a levy by the city at a rate greater than theretofore had been permissible (Section 5649-10*b*, General Code, now Section 5625-14, General Code).

It is urged by counsel for the defendants that the $875,619 of bonds and interest sought to be levied outside the charter limitation constitute pre-existing debts of the city, and that the cases of *State, ex rel. Ohio Natl. Bank of Columbus,* v. *Village of Hudson,* 134 Ohio St., 150, 16 N. E. (2d), 266, and *State, ex rel. Markel,* v. *City of Columbus,* 139 Ohio St., 351, 40 N. E. (2d), 144, are controlling in the situation under consideration, because of the pronouncement contained in syllabus 1 of. the *Hudson case,* which was followed with approval in the *Columbus case.* That syllabus is as follows:

"1. The inhibitions of Section 2, Article XII of the Ohio Constitution, with respect to tax rate limitations, are directed against new and not against pre-existing debts."

The *Hudson case,* it is revealed from an examination of the original file, dealt with a situation where special assessment bonds were issued by the village for the purpose of funding notes which had been issued to finance certain street improvements. The debt was contracted at a time when the 15-mill over-all *statutory* tax limitation was in force, and was sought to be enforced at a time when a 10-mill *constitutional* limitation was in effect.

The issue of bonds was of such size that the payment of interest and principal as required by the legislation would dissipate the entire tax income of the village from all sources, and in amount would exceed the applicable statutory and later-enacted constitutional limitations.

The notes and the later-issued bonds contained provisions which recited that no limitation of indebtedness or taxation, either statutory or constitutional, had been exceeded.

When, in a mandamus action instituted by a bondholder to compel the passage of tax legislation which would provide funds with which to pay the principal and interest payments due on said bonds, the village attempted to defend on the ground that such a levy would exceed both the 15- and 10-mill tax limitations of the Constitution of Ohio, the court held that the city was estopped to interpose such defense, and ordered that a writ issue compelling the passage of legislation which would provide funds with which to pay said bonds, even though such legislation would result in taxes which exceeded the statutory 15-mill limitation; and it further held that the 15- and 10-mill amendments to the Constitution of Ohio, had no application to the bonds there under consideration, because said amendments were adopted subsequent to the incurring of the debt.

It is thus apparent that funds with which to pay said bonds in accordance with the requirements of the legislation authorizing their issue, could not be raised within any applicable tax limitations.

In the case here under consideration, however, funds with which to meet all bond requirements for bonds issued by the council, and to be paid from funds raised within the applicable tax limitations, are available for

such payments; and such payments are by law made a first charge upon the tax revenues of the city.

True, the allocation of municipal revenues to the liquidation of bond interest and principal payments, will reduce the revenue available to the city for operating purposes, but such a result does not, in law, justify the levying of a tax outside the limitations, in order that the city may have a greater amount of operating revenue.

Inasmuch as the syllabus of the *Hudson case* must be read in connection with the facts there presented, we are of the opinion that the case is not authority for the contentions made by counsel for defendants.

The *Columbus case, supra,* likewise furnishes small comfort to defendants when thoroughly analyzed. There the case dealt with a reduction in the tax limitation after bonds had been previously issued under the limitation in effect at the time of their issuance; and under those circumstances the court said that there was no *duty enjoined by law* upon the council to place the principal and interest payments thereafter due upon said bonds, within the subsequently-reduced limitation. A demurrer to the petition seeking a writ of mandamus was therefore sustained.

Inasmuch as the $875,619 of bonds issued before the charter limitation became effective (November 6, 1928) were issued by council, without a vote of the people to authorize placing them outside the limitation, and inasmuch as those bonds do not constitute a pre-existing debt within the pronouncement of the Supreme Court in the *Hudson* and *Columbus cases, supra,* there seems to us to be no law which would permit the council to levy a tax outside of the charter limitation to pay the principal and interest due thereon.

It is the conclusion of the court that the $875,619 of bonds, issued before the passage of the charter-limi-

tation amendment, without the approval of the voters, must be paid from funds raised within the 7.5-mill charter tax limitation.

As to bonds issued after November 6, 1928, and before January 1, 1931, in the amount of $76,994, principal and interest, the evidence shows that in 1931 there was $95,407,760 of taxable personal property on the duplicate, which, pursuant to state law, was removed therefrom, and in its place was substituted intangible property amounting, in 1932, to $46,619,456, thereby accomplishing a tax base shrinkage of $48,788,304.

In our judgment, it was to compensate for just such a situation, i. e., for inequities which might arise under the application of the constitutional limitation of 15 mills, that the schedule to the amendment of Article XII, Section 2, of the Constitution of Ohio was appended, specifically providing "* * * levies for interest and sinking fund or retirement of bonds *issued or authorized prior to said date*" (January 1, 1931), "*shall be outside of said limitation to the extent required to equalize any reduction in the amount of taxable property available for such levies* * * *." (Italics ours.)

As we construe the wording of the schedule, it provides in the first two paragraphs that bonds issued outside the statutory limitation in effect at the time of their issuance, shall not be subject to the limitation of the constitutional 15-mill amendment.

The last paragraph of the schedule can, in our opinion, have application only to bonds issued within the statutory limitation applicable at the time of their issuance, because a construction making said last paragraph applicable to bonds issued outside the limitations would be productive of a conflict between the different paragraphs of the schedule, and would thereby

contravene the most elementary rule of statutory construction.

If said last paragraph be construed to have reference to bonds issued within the applicable limitations, such construction harmonizes all paragraphs of the schedule and permits levies for interest and principal due on bonds issued before January 1, 1931, to be made outside the limitation of the constitutional amendment to the extent necessary to equalize the tax loss resulting from a shrinkage of the tax base.

If the constitutional limitation can be thus rendered inapplicable in the situations specified in the schedule, how much more forcibly may the provisions of the schedule be said to apply to the limitation provided by a city charter in like situations.

The city, by legislative action, lost a right to levy taxes on $48,788,304 of personal property; and to in part compensate for that loss it is now attempted by the city to levy $76,994 of taxes outside of the limitation, as permitted under our interpretation of the third paragraph of said schedule. This, in our opinion, the city may lawfully do.

It will be observed, however, that $7,000 of bonds were issued October 1, 1931, after the date limited in said schedule. That principal, together with the accrued interest of $1,330, may not lawfully be included in the levy outside the 7.5-mill charter limitation, but must be paid from funds raised within the charter limitation of 7.5 mills.

A writ of mandamus may issue, requiring the council of the city of Akron, Ohio, to amend and revise the budget of the city of Akron by excluding therefrom levies outside the limitation of 7.5 mills in the amount of $883,949, this being the aggregate of the sums of $875,619 of principal and interest on bonds issued pri-

or to November 6, 1928, and $8,330 principal and interest on bonds issued after January 1, 1931. The defendants to pay the costs of this proceeding.

*Writ allowed.*

WASHBURN and DOYLE, JJ., concur.